1   ALEXANDER G. CALFO (SBN 152891)
    *alexander.calfo@btlaw.com*
2   KELLEY S. OLAH, (SBN 245180)
    *kelley.olah@btlaw.com*
3   GABRIELLE J. ANDERSON-THOMPSON (SBN
    247039)
4   *gabrielle.anderson-thompson@btlaw.com*
    **BARNES & THORNBURG LLP**
5   2029 Century Park East, Suite 300
    Los Angeles, California 90067
6   Telephone: (310) 284-3880
    Facsimile: (310) 284-3894
7
    Attorneys for Defendants
8   DEPUY ORTHOPAEDICS, INC.; JOHNSON &
    JOHNSON; JOHNSON & JOHNSON SERVICES,
9   INC.

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13  STEVEN NEWMAN, an Individual        Case No.
14  and GLORIANNE NEWMAN, an
    Individual;                          **NOTICE OF REMOVAL OF
15                                        ACTION UNDER 28 U.S.C.
                 Plaintiffs,             SECTION 1441(b) (DIVERSITY)**
16
         vs.
17
    DEPUY ORTHOPAEDICS, INC.;
18  JOHNSON & JOHNSON;
    JOHNSON & JOHNSON
19  SERVICES, INC.; and DOES 1
    through 10, inclusive,
20
                 Defendants.
21

22

23

24                  **NOTICE OF REMOVAL**

25       Defendants DePuy Orthopaedics, Inc. ("DePuy"), Johnson & Johnson and

26  Johnson & Johnson Services, Inc. (collectively, "removing defendants"), through

27  undersigned counsel, hereby remove the state-court action entitled *Steven Newman*

28  *v. DePuy Orthopaedics, Inc. et al.*, Civil Action No. BC564778, filed in the Superior

Court of California, County of Los Angeles.  Removal is warranted under 28 U.S.C. § 1441(b) because this is a diversity action over which the Court has original jurisdiction under 28 U.S.C. § 1332.

In support of removal, removing defendants state as follows:

1.      On or about November 21, 2014, plaintiffs commenced this action against the removing defendants and un-named Doe defendants, by filing a complaint in the Superior Court of Los Angeles County, in the State of California, bearing case number BC564778.  Plaintiffs filed a first amended complaint on November 26, 2014.

2.      In this action, plaintiffs allege that Mr. Newman has suffered various injuries as a result of being implanted with a Pinnacle Acetabular Cup System ("Pinnacle Cup System") marketed and sold by DePuy.  (*See* Am. Compl. ¶¶ 35-39.)

3.      This is one of more than 7,000 similar cases pending around the country involving personal-injury allegations by plaintiffs who were implanted with a Pinnacle Cup System marketed and sold by DePuy.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re: DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation,* before Judge Ed Kinkeade in the United States District Court for the Northern District of Texas.  Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

4.      As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it, pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

I.   **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

5.    The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

A.    **Complete Diversity Of Citizenship**

6.    Plaintiff Steven Newman is a citizen of the State of California.  (*See* Am. Compl. ¶ 8.)  The citizenship of Ms. Newman is not alleged, but defendants assume she is a citizen of the same state as her husband.

7.    DePuy is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

8.    Johnson & Johnson and Johnson & Johnson Services, Inc. are, and were at the time plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.    Plaintiffs also name numerous "Doe" defendants whose citizenship is disregarded for purposes of removal.  28 U.S.C. § 1441(a).

10.    Thus, there is complete diversity among the parties.

B.    **Amount In Controversy**

11.    Plaintiffs in this action claim that Mr. Newman has suffered "severe pain and discomfort and inflammation in his left thigh and groin."  (Am. Compl. ¶

36.)  Plaintiffs seek both compensatory and punitive damages.  (*See id.*, Prayer for Relief.)

12.    It is widely recognized that personal-injury claims facially meet the $75,000 jurisdictional threshold.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

13.    Given plaintiffs' claim that Mr. Newman has suffered "severe pain and discomfort and inflammation in his left thigh and groin," and their request for both compensatory and punitive damages, it is evident that the amount of recovery sought by plaintiffs exceeds $75,000.

## II.    REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

14.    DePuy and Johnson & Johnson Services, Inc. were each served with plaintiffs' original Complaint and First Amended Complaint on December 12, 2014. Johnson & Johnson has not been served.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

15.    The Superior Court of Los Angeles County is located within the Central District of California.  *See* 28 U.S.C. § 1441(a).

16.    Neither of the removing defendants is a citizen of the State of California, the State where this action was brought.  *See* 28 U.S.C. § 1441(b).

17.    No previous application has been made for the relief requested herein.

18.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendants, which papers include the Complaints, are attached collectively as Exhibit 1.  Pursuant to 28 U.S.C. § 1446(d), a copy of this

1 | Notice of Removal is being served upon counsel for plaintiffs and a copy is being
2 | filed with the Clerk of the Superior Court of the County of Los Angeles.
3 |     WHEREFORE, removing defendants respectfully remove this action from the
4 | Superior Court of the County of Los Angeles, in the State of California, bearing
5 | Number BC564778, to this Court.
6 |                              Respectfully submitted,
7 | Dated:     January 12, 2015          **BARNES & THORNBURG LLP**
8 |
9 |                              By:
10 |                                 Alexander G. Calfo
                                     Kelley S. Olah
11 |                                 Gabrielle J. Anderson-Thompson
                                     Attorneys for Defendants
12 |                                 DEPUY ORTHOPAEDICS, INC.;
                                     JOHNSON & JOHNSON;
                                     JOHNSON & JOHNSON
13 |                                 SERVICES, INC.

# EXHIBIT 1

1:55 p.m. 12-12-14

# SUMMONS on First Amended Complaint
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** DePuy Orthopaedics, Inc.; Johnson
*(AVISO AL DEMANDADO):* & Johnson; Johnson & Johnson
Services, Inc., and DOES 1-10, Inclusive,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 2 6 2014

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** Steven Newman, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* Individual;
Glorianne Newman, an Individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>LOS ANGELES SUPERIOR COURT<br>111 North Hill Street<br><br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC564778 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Justin Ehrlich   [SBN 217606]                                    (310) 458-6660
HERZOG, YUHAS, EHRLICH & ARDELL, APC
233 Wilshire Boulevard, Suite 550
Santa Monica, CA 90401

DATE: NOV 26 2014          Clerk, SHERRI R. CARTER          SHAUNYA BOLDEN , Deputy
*(Fecha)*                      *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served   CT Corp

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* DePuy Orthopaedics Inc

   under: ☑ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

                                                                      Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465.

EXHIBIT 1 — 00006

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill Street
Los Angeles, CA  90012

PLAINTIFF: Steven Newman, an Individual;

DEFENDANT: Depuy Orthopaedics, etc.

**CIVIL DEPOSIT**

Reserved for Clerk's File Stamp

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 21 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

CASE NUMBER:
BC 5 6 4 7 7 8

Clerk: Prepare a form for each depositor paying separately.

PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:

☐ Room 102, Central Civil       ☐ Clerk's Office, Room ____       ☐ Department Number ____

| ✓ | | Distribution Codes | Amt. Due | | ✓ | | Distribution Codes | Amt. Due |
|---|---|---|---|---|---|---|---|---|
| | 251 | DAILY JURY FEES<br>Dates:<br># of day(s) ____ X $ ____ | | | | 74 | DEPOSIT IN TRUST | |
| x | 72 | JURY FEES<br>Trial Date: ____<br>(Initial Deposit) $ 150.00 | 150.00 | | | 101 | FIRST PAPERS<br>(General Jurisdiction) | |
| | 253<br>252 | REPORTER'S FEES<br>Dates: ____<br># of 1/2 day(s) ____ X $ ____<br>Half day<br>Full Day | | | | 101<br>141<br>130 | FIRST PAPERS<br>Limited over $10,000<br>With declaration Limited to $10,000<br>(Per B&P 6322.1(a))<br>Limited to $10,000 | |
| | 721 | SANCTIONS ORDERED ON<br>Date: | | | | 211 | RECLASSIFICATION FEE | |
| | 213 | MOTION/APPLICATION TO CONTINUE HEARING | | | | 150 | COMPLEX LITIGATION TRIAL/Plaintiff | |
| | 200 | MOTION/APPLICATION TO CONTINUE TRIAL | | | | 151 | COMPLEX LITIGATION/Defendant | |
| | | Other: | | | | | | |

To be paid via  ☐ Cash  ☒ Check   ☐ Certified Check/Money Order   ☐ Credit Card
☐ On or before: ____   ☐ Forthwith

Payment will be made by  ☒ Plaintiff  Steven Newman, an   ☐ Defendant  Dupuy Orthopaedics,
                                        Individual;                                        etc.

JOHN A. CLARKE, Executive Officer/Clerk

DATED: November 21, 2014 ____                    BY: ____
                                                      Deputy Clerk

| TO BE COMPLETED BY DEPOSITOR | CASHIER'S VALIDATION |
|---|---|

Depositor's Name   HERZOG, YUHAS, EHRLICH & ARDELL, APC

☐ Plaintiff in Pro Per      ☐ Defendant in Pro Per

☐ Counsel for   ☒ Plaintiff  Steven Newman, an Individual;
                              Name of Party

               ☐ Defendant  Dupuy Orthopaedics, etc.
                              Name of Party

Address of depositor

233 Wilshire Boulevard, Suite 550
Street

Los Angeles, CA  90401
City/State/Zip

LACIV 083 (Rev. 01/07)                    **CIVIL DEPOSIT**
LASC Approved 03-04            Distribution: Original – Case File Copy – Customer            LA-083

EXHIBIT 1 — 00007

File 3191

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE
Case Number _____   BC 5 6 4 7 7 8

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Gregory Keosian | 91 | 635 | | | | |
| Hon. Elia Weinbach | 92 | 633 | | | | |
| Hon. Gail Feuer | 93 | 631 | | | | |
| Hon. Teresa Beaudet | 97 | 630 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____ NOV 2 1 2014 _____        SHERRI R. CARTER, Executive Officer/Clerk

LACIV PI 190 (Rev09/13)
LASC Approved 05-06
For Optical Use

By _____ SHAUNYA BOLDEN _____, Deputy Clerk

### NOTICE OF CASE ASSIGNMENT –
### UNLIMITED CIVIL CASE

EXHIBIT 1 - 00008

FILED
Los Angeles Superior Court

NOV 1 0 2014

Sherri R. Carter, Executive Officer/Clerk
By: K Gaudreau, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

In re Personal Injury Cases Assigned to the
Personal Injury Courts (Departments 91, 92,
93, and 97)

) Case No.:
)
) THIRD AMENDED GENERAL ORDER
) RE PERSONAL INJURY COURT ("PI
) Court") PROCEDURES (Effective as of
) November 4, 2014)

**DEPARTMENT:**       91       92       93       97

**FINAL STATUS CONFERENCE ("FSC"):**

- Date: _____ at 10:00 a.m.

**TRIAL:**

- Date: _____ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583.210):**

- Date: _____ at 8:30 a.m.

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California

Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los

Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND

SUPERSEDES ITS APRIL 4, 2014 AMENDED GENERAL ORDER AND

1

11/10/14

EXHIBIT 1 - 00009

1  GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL
2  JURISDICTION PERSONAL INJURY ACTIONS:

3       Effective March 18, 2013, the Court responded to systemic budget reductions by
4  centralizing the management of more than 18,000 general jurisdiction personal injury cases
5  in the Stanley Mosk Courthouse.  LASC opened three Personal Injury Courts ("PI Courts")
6  (Departments 91, 92 and 93), and on January 6, 2014, a fourth (Department 97) to adjudicate
7
8  all pretrial matters for these cases.  It also established a Master Calendar Court (Department
9  One), to manage the assignment of trials to 31 dedicated Trial Courts located countywide.
10 This Amended General Order lays out the basic procedures for the PI Courts' management of
11 pretrial matters.  The parties will find additional information about the PI Courts on the
12 court's website, *www.lacourt.org*.

13 1.     To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil
14 Case Cover Sheet Addendum (form LACIV 109).  The Court defines "personal injury" as:
15
16                "an unlimited civil case described on the Civil Case Cover Sheet Addendum and
17                Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property
18                Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-
19                Uninsured Motorist; Product Liability (other than asbestos or
20                toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other
21                Professional Health Care Malpractice; Premises Liability; Intentional Bodily
22                Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property
23                Damage/Wrongful Death. An action for intentional infliction of emotional
24                distress, defamation, civil rights/discrimination, or malpractice (other than
25                medical malpractice), is not included in this definition. An action for injury to
26                real property is not included in this definition."   Local Rule 2.3(a)(1)(A).
27

                                         2                              11/10/14

EXHIBIT 1 — 00010

The Court will assign a case to the PI Courts if plaintiff(s) check any of the following

boxes in the Civil Case Cover Sheet Addendum:

      A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful

      Death

      A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured

      Motorist

      A7260 Product Liability (not asbestos or toxic/environmental)

      A7210 Medical Malpractice – Physicians & Surgeons

      A7240 Medical Malpractice – Other Professional Health Care Malpractice

      A7250 Premises Liability (e.g., slip and fall)

      A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,

      assault, vandalism etc.)

      A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes

elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and

three of that form).

2.     The Court sets the above dates in this action in the PI Court circled above

(Department 91, 92, 93, or 97) at the Stanley Mosk Courthouse, 111 North Hill Street, Los

Angeles, CA 90012. Cal. Rules of Court, Rules 3.714(b)(3), 3.729.

**SERVICE OF SUMMONS AND COMPLAINT**

3.     Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s)

within three years of the date when the complaint is filed. C. C. P. § 583.210, subd. (a). On

the OSC re Dismissal date noted above, the PI Court will dismiss **the action and/or** all

11/10/14

EXHIBIT 1 – 00011

1  unserved parties unless the plaintiff(s) show cause why the action or the unserved parties

2  should not be dismissed. C.C.P. §§ 583.250; 581, subd. (b)(4).

3  4.      The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate

4  service on defendant(s) of the summons and complaint within six months of filing the

5  complaint.  Upon a showing that the plaintiff(s) failed to effect service within six months, the

6  PI Court will vacate the trial and FSC date noted above.

7

8  **STIPULATIONS TO CONTINUE TRIAL**

9  5.      Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.

10  § 583.310), the parties may advance or continue any trial date in the PI Courts without

11  showing good cause or articulating any reason or justification for the change.  To continue or

12  advance a trial date, the parties (or their counsel of record) should jointly execute and file (in

13  Room 102 of the Stanley Mosk Courthouse; fee required) a Stipulation to Continue Trial,

14  FSC and Related Motion/Discovery Dates (form available on the court's website, Personal

15  Injury Court link).  The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before

16  the trial date.  Parties seeking to continue the trial and FSC dates shall file the Stipulation at

17  least eight court days before the FSC date.  Parties seeking to advance the trial and FSC

18  dates shall file the Stipulation at least eight court days before the proposed advanced FSC

19  date.  Code Civ. Proc., § 595.2;  Govt. Code § 70617, subd. (c)(2).

20

21  **NO CASE MANAGEMENT CONFERENCES**

22  6.      The PI Courts do not conduct Case Management Conferences.  The parties need not

23  file a Case Management Statement.

24

25

26

27

4                                                                      11/10/14

EXHIBIT 1 - 00012

**LAW AND MOTION**

**ANY DOCUMENTS WITH DECLARATIONS AND/OR EXHIBITS MUST BE TABBED.  CRC §3.1110(f)**

**ALL DEPOSITION EXCERPTS REFERENCED IN BRIEFS MUST BE MARKED ON THE TRANSCRIPTS ATTACHED AS EXHIBITS.   CRC §3.1116(c)**

> *If your filing is not tabbed or depositions are not marked, do not file without the tabs or marked depositions unless today is the last day for filing.  If so, you must file a tabbed/marked copy with the clerk in the department where your motion will be heard within 2 court days.*

**Chambers Copies Required**

7.      In addition to filing original motion papers in Room 102 of the Stanley Mosk Courthouse, the parties must deliver, directly to the PI Court courtrooms, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the Chambers Copies behind tabs.

**Reservation of Hearing Date**

8.      Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System available online at *www.lacourt.org* (link on homepage). Parties or counsel who are unable to utilize the online Court Reservation System may reserve a motion hearing date by telephoning the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**Withdrawal of Motion**

9.      California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the

5                                          11/10/14

EXHIBIT 1 - 00013

1   PI Courts urge parties who amend pleadings in response to demurrers to file amended

2   pleadings before the date when opposition to the demurrer is due so that the PI Courts do not

3   needlessly prepare tentative rulings on demurrers.

4   **Discovery Motions**The purpose of an Informal Discovery Conference ("IDC") is to assist

5   the parties to resolve and/or narrow the scope of discovery disputes.  Lead trial counsel on

6   each side, or another attorney with full authority to make binding agreements, must attend in

7   person.  The PI judges have found that, in nearly every case, the parties amicably resolve

8   disputes with the assistance of the Court.11.  Parties **must** participate in an IDC **before** a

9

10  Motion to Compel Further Responses to Discovery will be heard, unless, the moving party

11  submits evidence, by way of declaration, that the opposing party has failed or refused to

12  participate in an IDC.  Scheduling or participating in an IDC does not extend any deadlines

13  imposed by the Code of Civil Procedure for noticing and filing discovery motions.  Ideally,

14  the parties should participate in an IDC before a motion is filed because the IDC may avoid

15  the necessity of a motion or reduce its scope.  Because of that possibility, attorneys are

16  encouraged to stipulate to extend the 45 (or 60) day deadline for filing a motion to compel

17  further discovery responses in order to allow time to participate in an IDC.  If parties do not

18  stipulate to extend the deadlines, the moving party may file the motion to avoid it being

19  deemed untimely.    However, the IDC must take place before the motion is heard so it is

20  suggested that the moving party reserve a date for the motion hearing that is at least 60 days

21  after the date when the IDC reservation is made.  Motions to Compel Further Discovery

22  Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may

23  advance the hearing on a Motion to Compel Further Discovery Responses on any available

24  hearing date that complies with the notice requirements of the Code of Civil Procedure.

25

26

27

6                          11/10/14

EXHIBIT 1 - 00014

12.     In order to reserve an IDC, the parties must complete the **Request for Informal Discovery Conference for Personal Injury Courts and Response (LACIV 239)** which can be found on the court's website under the Personal Injury tab.  The party requesting the IDC must email the completed form to the department's email address.  (The email addresses for all four PI Hub courts are listed on the form.)    The court will then inform the requesting party of the date and time of the IDC.  The requesting party must then notify all parties of the date and time of the IDC.

13.     Time permitting; the PI Hub judges may be available to participate in IDCs to try to resolve other types of discovery disputes.

**Ex Parte Applications**

14.     Under the California Rules of Court, courts may only grant *ex parte* relief upon a showing, by admissible evidence, that the moving party will suffer "irreparable harm," "immediate danger," or where the moving party identifies "a statutory basis for granting relief ex parte."  Cal. Rules of Court, Rule 3.1202(c).  The PI Courts have no capacity to hear multiple *ex parte* applications or to shorten time to add hearings to their fully booked motion calendars.  The PI Courts do not regard the Court's unavailability for timely motion hearings as an "immediate danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte* relief, counsel should reserve the earliest available motion hearing date, and stipulate with all parties to continue the trial to a date thereafter using the Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form available on the court's website, PI Court Tab).  Counsel should also check the Court Reservation System from time to time because earlier hearing dates may become available as cases settle or counsel otherwise take hearings off calendar.

11/10/14

EXHIBIT 1 - 00015

**REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

15.     Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C") Court shall file (in Room 102 of the Stanley Mosk Courthouse) and serve the Court's "Motion to Transfer Complicated Personal Injury Case to Independent Calendar Court" (form available on the Court's website, PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a "Personal Injury" case as defined in the General Order re General Jurisdiction PI Cases, or if it is "complicated." In determining whether a personal injury case is too "complicated" for the PI Courts to manage, the PI Courts will consider, among other things, whether the case will involve numerous parties, cross-complaints, witnesses (including expert witnesses), and/or pretrial hearings.

16.     Parties opposing a motion to transfer have five court days to file (in Room 102) an Opposition (using the same Motion to Transfer form).

17.     The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court. Although the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts will make an independent determination whether to transfer the case or not.

**GENERAL ORDER – FINAL STATUS CONFERENCE**

18.     Parties shall comply with the requirements of the PI Courts' "Amended General Order – Final Status Conference," which shall be served with the summons and complaint.

**JURY FEES**

19.     Parties must pay jury fees no later than 365 calendar days after the filing of the initial complaint. (Code Civ. Proc., § 631, subds. (b) and (c).)

**JURY TRIALS**

8

11/10/14

EXHIBIT 1 – 00016

20.     The PI Courts do not conduct jury trials.  On the trial date, a PI Court will transfer the case to the Master Calendar Court in Department One in the Stanley Mosk Courthouse. Department One assigns cases out for trial to dedicated Trial Courts located in the Stanley Mosk, Chatsworth, Van Nuys, Santa Monica, Torrance, Long Beach, Pomona, and Pasadena courthouses.

**SANCTIONS**

21.     The Court has discretion to impose sanctions for any violation of this general order. (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

Dated: *Nov 10, 2014*

Daniel J. Buckley
Supervising Judge, Civil
Los Angeles Superior Court

9

11/10/14

EXHIBIT 1 - 00017

1  Justin Ehrlich [Bar #217606]
   Ian Herzog [Bar #41396]
2  HERZOG, YUHAS, EHRLICH & ARDELL
   A Professional Corporation
3  233 Wilshire Boulevard, Suite 550
   Santa Monica, California 90401
4  Telephone:    (310) 458-6660
   Facsimile:    (310) 458-9065
5
   Attorneys for Plaintiffs
6  STEVEN NEWMAN
   GLORIANNE NEWMAN
7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 26 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  STEVEN NEWMAN, an Individual;          CASE NO. BC564778
    GLORIANNE NEWMAN, an Individual,
12                                         FIRST AMENDED COMPLAINT FOR
                                           DAMAGES; PERSONAL INJURIES:
                  Plaintiffs,              MEDICAL DEVICE;
13
                                           1.   Negligence
14       vs.                               2.   Strict Products Liability (Manufacturing
                                                Defect)
    DEPUY ORTHOPAEDICS, INC.; JOHNSON      3.   Strict Products Liability (Design Defect)
15  & JOHNSON; JOHNSON & JOHNSON           4.   Strict Products Liability (Inadequate
    SERVICES, INC.; and DOES 1-10, Inclusive,   Warning)
16                                         5.   Breach of Express Warranty
                  Defendants.              6.   Breach of Implied Warranty of
17                                              Merchantability
                                           7.   Negligent Misrepresentation
18                                         8.   Fraud
                                           9.   Loss of Consortium
19
20                                         DEMAND FOR JURY

21                      COMPLAINT FOR DAMAGES

22       Plaintiffs STEVEN NEWMAN, an Individual, and GLORIANNE NEWMAN, an Individual,

23  ("Plaintiffs") allege on information and belief against DEPUY ORTHOPAEDICS, INC., JOHNSON &

24  JOHNSON, JOHNSON & JOHNSON SERVICES, INC., and DOES 1-10, INCLUSIVE,

25  ("Defendants"), the following:

26                                         I.

27                    INTRODUCTION AND SUMMARY OF ACTION

28       1.    Defendants manufactured the Pinnacle Acetabular Cup System ("Pinnacle

                                    — 1 —
                       [FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 — 00018

Device"), and launched it in 2001. The Pinnacle Device was designed, developed, and sold for human hip joints damaged or diseased due to fracture, osteoarthritis, rheumatoid arthritis, and avascular necrosis. The Pinnacle Device is designed to be fastened to human bone with surgical screws. The Pinnacle Device was designed and sold to provide pain relief and consistent and smooth range of motion. Defendants marketed and described the Pinnacle Device as "[u]niquely designed to meet the demands of active patients like you —and reduce pain" and advertised it with pictures of a young woman trying on sneakers in an athletic shoe store. Defendants advertised the Pinnacle Device as a superior device featuring TrueGlide technology, allowing the body to create a thin film of lubrication between surfaces, which enables "a more fluid range of natural motion."

2.     Defendants also advertised and sold the Pinnacle Device as the best surgical option that "[r]ecreates the natural ball-and-socket joint of your hip, increasing stability and range of motion."

3.     On information and belief Plaintiffs allege that Defendants sold approximately 150,000 Pinnacle Devices. Defendants have stated in promotional materials that "99.9% of Pinnacle Hip components are still in use today."

4.     On information and belief, Plaintiffs allege that over 1,300 adverse reports have been submitted to the U.S. Food and Drug Administration (FDA) regarding failures or complications of the Pinnacle Device.

5.     On information and belief, Plaintiffs allege that Defendants are aware that the use of the Pinnacle Device may result in metallosis, biologic toxicity, and a high failure rate. Plaintiffs further allege that use of the Pinnacle Device results in unsafe release of toxic metal ions into hip implant recipients' tissue and bloodstream. Plaintiffs further allege that Defendants are aware that metal particles from the Pinnacle Device results in metallosis, tissue death, bone erosion, and development of tumors.

6.     On information and belief, Plaintiffs allege that particulate debris from the Pinnacle Device causes severe inflammation, severe pain, tissue and bone loss, and other related diseases.

7.     Plaintiffs further allege that Defendants are aware that certain Pinnacle Device

- 2 -

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00019

1  recipients have elevated cobalt and chromium levels greatly exceeding acceptable safety
2  standards.

3  II.

4  **PARTIES**

5      8.    Plaintiff STEVEN NEWMAN is, and at all times relevant to this Complaint was, a
6  resident of State of California. On or about April 28, 2005, Plaintiff Steven Newman underwent a left
7  total hip arthroplasty procedure. At the time of the hip implant surgery, the Pinnacle System
8  manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff Steven
9  Newman. Plaintiff Steven Newman's surgeon, medical staff, and other healthcare providers met or
10 exceeded the standard of care applicable to the hip replacement surgery. The Pinnacle System
11 subsequently failed.

12     9.    Defendant DEPUY ORTHOPAEDICS, INC. is, and at all times relevant to this
13 Complaint was, an Indiana Corporation with its principal place of business at 700 Orthopaedic
14 Drive, Warsaw, Indiana 46581. Defendant DEPUY ORTHOPAEDICS, INC. is and was at all
15 times relevant herein doing business in and/or having directed its activities at Texas, and
16 specifically this judicial district.

17     10.    Defendant JOHNSON & JOHNSON is, and at all times relevant to this Complaint was, a
18 New Jersey corporation with its principal place of business in New Brunswick, New Jersey. JOHNSON
19 & JOHNSON is the parent company of JOHNSON & JOHNSON SERVICES, INC. and DEPUY
20 ORTHOPAEDICS, INC. Defendant, JOHNSON & JOHNSON is and was at all times relevant herein
21 doing business in and/or having directed its activities at Texas, and specifically this judicial district.

22     11.    Defendant JOHNSON & JOHNSON SERVICES, INC. is, and at all times
23 relevant to this Complaint was, a New Jersey Corporation with its principal place of business at
24 One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant JOHNSON &
25 JOHNSON SERVICES, INC. is and was at all times relevant herein doing business in and/or
26 having directed its activities at Texas, and specifically this judicial district.

27     12.    Plaintiffs are unaware of the true names and capacities, whether individual,
28 corporate, associate, or otherwise, of defendants DOES 1-10, inclusive, or any of them, and

- 3 -

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00020

1  therefore sues these Defendants, and each of them, by such fictitious names. Plaintiff will seek

2  leave of this Court to amend this complaint when the status and identities of these Defendants are

3  ascertained.

4      13.    At all times relevant herein, Defendants were the agents of each other, and in

5  doing the things alleged herein, each defendant was acting within the course and scope of its agency and

6  was subject to and under the supervision of its co-defendants.

7  **III.**

8  **JURISDICTION AND VENUE**

9      14.    This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §

10  1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in

11  controversy exceeds $75,000.00, exclusive of interest and costs.

12      15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

13  **IV.**

14  **FACTUAL ALLEGATIONS**

15  A.    **The Pinnacle Device With An "Ultamet" (Metal) Liner**

16      16.    The Pinnacle Device was developed for the purpose of reconstructing diseased

17  human hip joints from conditions such as osteoarthritis, rheumatoid arthritis, avascular necrosis

18  (AVN), fracture, and other degenerative conditions. The hip joint connects the thigh (femur)

19  bone of a patient's leg to the patient's pelvis. The hip joint is like a ball that fits in a socket. The

20  socket portion of the hip is called the acetabulum. The femoral head at the top of the femur bone

21  rotates within the curved surface of the acetabulum.

22      17.    The Pinnacle Device is made up of four components: the metal femoral stem is

23  inserted inside the femur bone, the metal femoral head (or ball) connects to the top of the stem

24  and then makes contact with a liner that is attached to the interior portion of the metal acetabulum cup

25  (socket). The acetabulum cup is comprised of a titanium alloy. Either a plastic, ceramic, or cobalt-

26  chromium metal liner is then placed on the inside of the acetabulum cup. The metal femoral head rotates

27  within the plastic, ceramic, or metal liner, depending on which liner the surgeon selects based on the

28  patient's needs. The cobalt-chromium metal liner is branded by Defendants as the "Ultamet." The

– 4 –

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 – 00021

1  Pinnacle Device with an Ultamet (metal) liner is a "metal-on metal" device due to the fact that both

2  articulating surfaces — the femoral head (ball) and acetabulum liner (socket) — are comprised of

3  cobalt-chromium metal.

**B.    Defendants Did Not Seek Premarket Approval From The FDA, And Thus**
**The FDA Makes No Finding That The Pinnacle Device Is Safe Or Effective**

6      18.     The Pinnacle Device is a Class III medical device. Class III devices are those that

7  operate to sustain human life, are of substantial importance in preventing impairment of human

8  health, or pose potentially unreasonable risks to patients.

9      19.     The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938

10  ("MDA"), in theory, require Class III medical devices, including the Pinnacle Device, to

11  undergo premarket approval by the FDA, a process which obligates the manufacturer to design

12  and implement a clinical investigation and to submit the results of that investigation to the FDA.

13      20.     Premarket approval is a rigorous process that requires a manufacturer to submit

14  what is typically a multivolume application that includes, among other things, full reports of all

15  studies and investigations of the device's safety and effectiveness that have been published or

16  should reasonably be known to the applicant; a full statement of the device's components,

17  ingredients, and properties and of the principle or principles of operation; a full description of

18  the methods used in, and the facilities and controls used for, the manufacture, processing, and,

19  when relevant, packing and installation of, such device; samples or device components required

20  by the FDA; and a specimen of the proposed labeling.

21      21.     The FDA may grant premarket approval only if it finds that there is reasonable

22  assurance that the medical device is safe and effective and must weigh any probable benefit to

23  health from the use of the device against any probable risk of injury or illness from such use.

24      22.     A medical device on the market prior to the effective date of the MDA — a so-called

25  "grandfathered" device — was not required to undergo premarket approval. In addition, a

26  medical device marketed after the MDA's effective date may bypass the rigorous premarket

27  approval process if the device is "substantially equivalent" to a "grandfathered" pre-MDA

28  device (i.e., a device approved prior to May 28, 1976). This exception to premarket approval is

- 5 -
[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00022

1  known as the "510(k)" process and simply requires the manufacturer to notify the FDA under

2  section 510(k) of the MDA of its intent to market a device at least 90 days prior to the device's

3  introduction on the market, and to explain the device's substantial equivalence to a pre-MDA

4  predicate device. The FDA may then approve the new device for sale in the United States.

5      23.      Rather than being approved for use by the FDA pursuant to the rigorous

6  premarket approval process, the Pinnacle Device metal-on-metal total hip replacement system

7  was certified to be sold on the basis of Defendants' claim that, under section 510(k) of the

8  MDA, it was "substantially equivalent" to another older metal-on-metal hip implant device that

9  Defendants sold and implanted prior to the enactment of the MDA in 1976.

10      24.      As such, under the 510(k) process, Defendants were able to market the Pinnacle

11  Device with virtually no clinical or non-clinical trials or FDA review of the implant for safety

12  and effectiveness.

13

14  **C.      Defendants Took No Steps To Test The Pinnacle Device Or They Would
            Have Discovered That It Leads To Metallosis And Other Complications Before**

15  **Releasing It On The Market**

16      25.      Had Defendants conducted clinical trials of the Pinnacle Device before it was

17  first released on the market in the early 2000's, they would have discovered at that time what

18  they ultimately learned in and around 2007 -— that the Pinnacle Device results in a high

19  percentage of patients developing metallosis, biologic toxicity and an early and high failure rate

20  due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium

21  metal femoral head rotates within the cobalt-chromium metal acetabular liner.

22      26.      In other words, implantation of the Pinnacle Device results in the nearly

23  immediate systemic release of high levels of toxic metal cobalt-chromium ions into every hip

24  implant patient's tissue and bloodstream. This is because cobalt-chromium metal particles are

25  released by friction from the metal femoral head rotating within the metal liner. The particles

26  then accumulate in the patient's tissue surrounding the implant giving rise to metallosis,

27  pseudotumors, or other conditions.

28      27.      The formation of metallosis, pseudotumors, and infection and inflammation causes severe

- 6 -

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00023

1    pain and discomfort, death of surrounding tissue and bone loss, and a lack of mobility.

2        28.     The problems with the Pinnacle Device are similar to the issues that gave rise to

3    Defendants' recall of the ASR XL Acetabular System and ASR Hip Resurfacing System. Like

4    the Pinnacle Device, the ASR is also prone to early failure, and causes metallosis and cobalt

5    toxicity resulting in serious health problems and the need for subsequent revision surgery. As a

6    result, in August 2010, Defendants, in acknowledging the high failure rate of the ASR, recalled

7    more than 93,000 ASRs worldwide.  It is anticipated that Defendants will at some point recall

8    Pinnacle Devices for the same reasons.

9        29.     Upon information and belief, Plaintiffs allege that the FDA has received more than 1,300

10   adverse reports regarding problems associated with or attributed to the Pinnacle Device.

11       30.     Upon information and belief, Plaintiffs allege that many recipients of the Pinnacle

12   Device are suffering from elevated levels of chromium and cobalt. Plaintiffs further allege on

13   information and belief that Defendants are aware that certain recipients of the Pinnacle Device

14   have significantly elevated levels of chromium and cobalt in amounts many times higher than

15   acceptable or recommended safety levels. Notably, the ASR and the Pinnacle Device were

16   designed by the same orthopaedic surgeon, Dr. Thomas Schmalzried.

17       31.     A number of governmental regulatory agencies have recognized the problems

18   that are caused by metal-on-metal implants such as the ASR and Pinnacle Device. For instance,

19   The Medicines and Healthcare Products Regulatory Agency ("MHRA") in Britain investigated

20   Defendants' metal-on-metal total hip replacement system after receiving widespread reports of

21   soft tissue reactions and tumor growth in thousands of patients who had received these implants.

22   MHRA has required physicians to establish a system to closely monitor patients known to have

23   metal-on-metal hips by monitoring the cobalt and chromium ion levels in their blood and to

24   evaluate them for related soft tissue reactions.

25       32.     Similarly, the Alaska Department of Health recently issued a bulletin warning of

26   the toxicity of Defendants' metal-on-metal total hip replacement systems. The State of Alaska,

27   like the MHRA, identified the need for close medical monitoring, surveillance and treatment of

28   all patients who had received these and similar metal-on-metal implants.

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00024

33.     Despite the public knowledge to the contrary, Defendants' continue to misrepresent the Pinnacle Device as a high-quality, safe and effective hip replacement product in their marketing and promotional materials. This is despite the fact that Defendants have known for years that the Pinnacle Device poses a danger to patients that have it implanted.

34.     As a result, Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among other complications. These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in life-long health problems caused by the defective device.

D.      **Plaintiff Steven Newman Was Implanted With A Pinnacle Device And As A Result Has Suffered Severe Injuries**

35.     On or about April 28, 2005, Plaintiff Steven Newman underwent a left total hip arthroplasty procedure. A Pinnacle Device with a metal liner was implanted in place of his left hip.

36.     Upon information and belief, after the surgery, friction and wear between the cobalt-chromium metal head and cobalt-chromium metal liner caused large amounts of toxic cobalt-chromium metal ions and particles to be released into Plaintiff Steven Newman's blood and tissue and bone surrounding the implant. As a result, Plaintiff Steven Newman has been experiencing severe pain and discomfort and inflammation in his left thigh and groin. He also experiences a popping and snapping sensation in his hip-joint when walking or moving to and from a sitting position.  In May, 2014, Plaintiff underwent revision surgery.

37.     Due to Plaintiff Steven Newman's chronic pain and discomfort and other symptoms, he will likely have to undergo revision surgery to remove and replace the defective Pinnacle Hip Systems.

38.     All of the injuries and complications suffered by Plaintiff Steven Newman were caused by the defective design, warnings, construction and unreasonably dangerous character of the Pinnacle Device that was implanted in Plaintiff Steven Newman.  Had Defendants not concealed the known defects, the early failure rate, the known complications and the unreasonable risks associated with the

- 8 -

EXHIBIT J - 00025

use of the Pinnacle Device, Plaintiff would not have consented to the Pinnacle Device being used in his total hip anthroplasty.

39.    Within the last two years, Plaintiff Steven Newman for the first time became aware of the negligent cause of his injuries.  Until then, Plaintiff Steven Newman was unaware of any causal link between the injuries he has suffered and any wrongdoing on the part of Defendants due to the faulty and defective nature of the Pinnacle Device and due in part to the failures of Defendants to properly warn Plaintiff Steven Newman and his physicians about the Pinnacle Device's defective and faulty nature. Plaintiff Steven Newman was unable to make an earlier discovery of the causal link despite reasonable diligence because of Defendants' failure to properly warn Plaintiff Steven Newman and his physicians about the Pinnacle Device's defective and faulty nature, and Defendants' failure to issue any recall or take any proactive action with respect to the injuries being caused to patients that have been implanted with a Pinnacle Device.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

40.    Plaintiff Steven Newman incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

41.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

42.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into interstate commerce in that Defendants knew or should have known that those individuals that had the device surgically implanted were at risk for suffering harmful effects from it including but not limited to partial or complete loss

- 9 -

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00026

of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

43.     The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

   a.   Negligently designing the Pinnacle Device in a manner which was dangerous to those individuals who had the device surgically implanted;

   b.   Designing, manufacturing, producing, creating, and/or promoting the Pinnacle Device without adequately, sufficiently, or thoroughly testing it;

   c.   Not conducting sufficient testing programs to determine whether or not the aforesaid Pinnacle Device was safe for use;

   d.   Defendants herein knew or should have known that Pinnacle Device was unsafe and unfit for use by reason of the dangers to its users;

   e.   Selling the Pinnacle Device without making proper and sufficient tests to determine the dangers to its users;

   f.   Negligently failing to adequately and correctly warn Plaintiff Steven Newman or his physicians, hospitals and/or healthcare providers of the dangers of Pinnacle Device;

   g.   Negligently failing to recall their dangerous and defective Pinnacle Device at the earliest date that it became known that the device was, in fact, dangerous and defective;

   h.   Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the Pinnacle Device into their patients;

   i.   Negligently advertising and recommending the use of the Pinnacle Device despite the fact that Defendants, knew or should have known of its dangerous propensities;

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00027

j.   Negligently representing that the Pinnacle Device offered was safe for use for its intended purpose, when, in fact, it was unsafe;

k.   Negligently representing that the Pinnacle Device offered low wear and high stability when in fact the opposite was true;

l.   Negligently manufacturing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

m.   Negligently producing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

n.   Negligently assembling the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

o.   Defendants under-reported, underestimated and downplayed the serious danger of the Pinnacle Device.

44.   Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Pinnacle Device in that they:

a.   Failed to use due care in designing and manufacturing the Pinnacle Device so as to avoid the aforementioned risks to individuals that had the devices surgically implanted;

b.   Failed to accompany their product with proper warnings;

c.   Failed to accompany their product with proper instructions for use;

d.   Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Pinnacle Device; and

e.   Were otherwise careless and/or negligent.

45.   Despite the fact that Defendants knew or should have known that the Pinnacle Device caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Pinnacle Device.

46.   Defendants knew or should have known that consumers such as Plaintiff Steven Newman would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants'

- 11 -

EXHIBIT 1 — 00028

1 | failure to exercise ordinary care, as set forth above.

2 |     47.    Defendants' negligence was the proximate cause of Plaintiff Steven Newman's physical,

3 | mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue

4 | to suffer.

5 |     48.    By reason of the foregoing, Plaintiff Steven Newman experienced and/or will experience

6 | severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of

7 | motion, as well as other severe and personal injuries which are permanent and lasting in nature,

8 | physical pain and mental anguish, including diminished enjoyment of life, as well as the need

9 | for a revision surgery to replace the device with the attendant risks of complications and death

10 | from such further surgery.

11 |     49.    Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

12 | suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

13 |     50.    In performing the foregoing acts and omissions, Defendants acted despicably,

14 | fraudulently, and with malice and oppression so as to justify an award of punitive and

15 | exemplary damages.

16 |

17 | **SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT)**

18 | **(Against All Defendants)**

19 |     51.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

20 | allegation set forth in the preceding paragraphs and further alleges as follows:

21 |     52.    Defendants designed, manufactured, tested, marketed and distributed into the stream of

22 | commerce the Pinnacle Device.

23 |     53.    The Pinnacle Device that was surgically implanted in Plaintiff Steven Newman was

24 | defective in its manufacture when it left the hands of Defendants in that it deviated from product

25 | specifications, posing a serious risk that it could fail early in patients, therefore giving rise to

26 | physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the

27 | device with the attendant risks of complications and death from such further surgery.

28 |     54.    As a direct and proximate result of Defendants' placement of the defective

- 12 -

EXHIBIT 1 - 00029

1   Pinnacle Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will
2   experience severe harmful effects including but not limited to partial or complete loss of mobility, loss
3   of range of motion, as well as other severe and personal injuries which are permanent and lasting in
4   nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the
5   need for a revision surgery to replace the device with the attendant risks of complications and
6   death from such further surgery.

7        55.     Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman
8   suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

9        56.     In performing the foregoing acts and omissions, Defendants acted despicably,
10  fraudulently, and with malice and oppression so as to justify an award of punitive and
11  exemplary damages.

12
13                          **THIRD CAUSE OF ACTION**
                    **STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
14                              **(Against All Defendants)**

15       57.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every
16  allegation set forth in the preceding paragraphs and further alleges as follows:

17       58.     At all times herein mentioned, Defendants designed, researched, manufactured,
18  tested, advertised, promoted, marketed, sold, and/or distributed the Pinnacle Device as
19  hereinabove described that was surgically implanted in Plaintiff Steven Newman.

20       59.     At all times herein mentioned, the Pinnacle Device designed, researched,
21  manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was
22  in an unsafe, defective, and inherently dangerous condition, which was dangerous to users such as
23  Plaintiff Steven Newman that had the device surgically implanted.

24       60.     At all times herein mentioned, the Pinnacle Device designed, researched,
25  manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was
26  in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

27       61.     At all times herein mentioned, the Pinnacle Device was expected to and did
28  reach the usual consumers, handlers, and persons coming into contact with said product without

                                        – 13 –

EXHIBIT 1 - 00030

1   substantial change in the condition in which it was designed, produced, manufactured, sold,

2   distributed, and marketed by Defendants.

3       62.   At all times herein mentioned, the Pinnacle Device's unsafe, defective, and

4   inherently dangerous condition was a cause of injury to Plaintiff Steven Newman.

5       63.   At all times herein mentioned, the Pinnacle Device failed to perform as safely as

6   an ordinary consumer would expect when used in an intended or reasonably foreseeable

7   manner.

8       64.   Plaintiff Steven Newman's injuries resulted from use of the Pinnacle Device that was

9   both intended and reasonably foreseeable by Defendants.

10      65.   At all times herein mentioned, the Pinnacle Device posed a risk of danger inherent

11  in the design which outweighed the benefits of that design.

12      66.   At all times herein mentioned, the Pinnacle Device was defective and unsafe, and

13  Defendants knew or had reason to know that said product was defective and unsafe, especially

14  when used in the form and manner as provided by Defendants.

15      67.   Defendants knew, or should have known, that at all times herein mentioned that

16  the Pinnacle Device was in a defective condition, and was and is inherently dangerous and

17  unsafe.

18      68.   At the time of the implantation of the Pinnacle Device into Plaintiff Steven Newman, the

19  aforesaid product was being used for the purposes and in a manner normally intended, namely

20  for use as a hip replacement device.

21      69.   Defendants, with this knowledge, voluntarily designed their Pinnacle Device in a

22  dangerous condition for use by the public and, in particular, Plaintiff Steven Newman.

23      70.   Defendants had a duty to create a product that was not unreasonably dangerous for its

24  normal, intended use.

25      71.   Defendants designed, researched, manufactured, tested, advertised, promoted,

26  marketed, sold and distributed a defective product which, when used in its intended or

27  reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff

28  Steven Newman, in particular, and Defendants are therefore strictly liable for the injuries sustained by

- 14 -

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00031

1    Plaintiff Steven Newman.

2        72.    As a direct and proximate result of Defendants' placement of the defective Pinnacle

3    Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will experience

4    severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of

5    motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical

6    pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision

7    surgery to replace the device with the attendant risks of complications and death from such further

8    surgery.

9        73.    Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

10   suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

11       74.    In performing the foregoing acts and omissions, Defendants acted despicably,

12   fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary

13   damages.

14
15                        **FOURTH CAUSE OF ACTION**
                 **STRICT PRODUCTS LIABILITY (INADEQUATE WARNING)**
16                          **(Against All Defendants)**

17       75.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

18   allegation set forth in the preceding paragraphs and further alleges as follows:

19       76.    Defendants designed, manufactured, tested, marketed and distributed into the

20   stream of commerce the Pinnacle Device.

21       77.    The Pinnacle Device placed into the stream of commerce by Defendants was

22   defective due to inadequate warning, because Defendants knew or should have known that the

23   Pinnacle Device could fail early in patients therefore give rise to physical injury, pain and

24   suffering, debilitation, and the need for a revision surgery to replace the device with the attendant

25   risks of complications and death from such further surgery, but failed to give consumers adequate

26   warning of such risks. Further, the Pinnacle Device placed into the stream of commerce by Defendants

27   was surgically implanted in a manner reasonably anticipated by Defendants.

28       78.    As a direct and proximate result of Defendants' placement of the defective

                                    - 15 -

EXHIBIT 1 - 00032

1   Pinnacle Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will

2   experience severe harmful effects including but not limited to partial or complete loss of mobility, loss

3   of range of motion, as well as other severe and personal injuries which are permanent and lasting

4   in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as

5   the need for a revision surgery to replace the device with the attendant risks of complications

6   and death from such further surgery.

7   79.   Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

8   suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

9   80.   In performing the foregoing acts and omissions, Defendants acted despicably,

10   fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary

11   damages.

12

13   **FIFTH CAUSE OF ACTION**
    **BREACH OF EXPRESS WARRANTY**
    **(Against All Defendants)**

14

15   81.   Plaintiffs incorporate by reference, as if fully set forth herein, each and every

16   allegation set forth in the preceding paragraphs and further alleges as follows:

17   82.   Defendants designed, manufactured, tested, marketed and distributed into the stream of

18   commerce the Pinnacle Device.

19   83.   Defendants expressly warranted that the Pinnacle Device was a safe and effective

20   hip replacement system.

21   84.   The Pinnacle Device placed into the stream of commerce by Defendants did not

22   conform to these express representations because they failed early thereby giving rise to

23   unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery

24   to replace the device with the attendant risks of complications and death from such further surgery.

25   85.   As a direct and proximate result of Defendants' breach of express warranties

26   regarding the safety and effectiveness of the Pinnacle Device, Plaintiff Steven Newman has suffered

27   significant damages, including but not limited to physical injury, economic loss, pain and suffering, and

28   the need for further surgery to replace the faulty device, and will continue to suffer such damages in

- 16 -

EXHIBIT 1 - 00033

1    the future.

2        86.    In taking the actions and omissions that caused these damages, Defendants were

3    guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive

4    damages.

5                              **SIXTH CAUSE OF ACTION**
6                **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
                              **(Against All Defendants)**
7

8        87.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

9    allegation set forth in the preceding paragraphs and further alleges as follows:

10       88.    Defendants designed, manufactured, tested, marketed and distributed into the

11   stream of commerce the Pinnacle Device.

12       89.    At the time Defendants designed, manufactured, tested, marketed and distributed

13   into the stream of commerce the Pinnacle Device, Defendants knew the use for which the

14   Pinnacle Device was intended, and impliedly warranted the Pinnacle Device to be of

15   merchantable quality and safe for such use.

16       90.    Plaintiffs reasonably relied upon the skill and judgment of Defendants as to

17   whether the Pinnacle Device was of merchantable quality and safe for its intended use.

18       91.    Contrary to Defendants' implied warranties, the Pinnacle Device was not of

19   merchantable quality or safe for its intended use, because the Pinnacle Device was unreasonably

20   dangerous as described above.

21       92.    As a direct and proximate result of Defendants' breach of implied warranties

22   regarding the safety and effectiveness of the Pinnacle Device, Plaintiff Steven Newman has suffered

23   significant damages, including but not limited to physical injury, economic loss, pain and suffering, and

24   the need for further surgery to replace the faulty device, and will continue to suffer such damages in

25   the future.

26       93.    In taking the actions and omissions that caused these damages, Defendants were

27   guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive

28   damages.

- 11 -
[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00034

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

94.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

95.     The Defendants supplied false information to the public, to Plaintiff Steven Newman and to his physicians regarding the high-quality, safety and effectiveness of the Pinnacle Device. Defendants provided this false information to induce the public, Plaintiff Steven Newman and his physicians to purchase and implant a Pinnacle Device.

96.     The Defendants knew or should have known that the information they supplied regarding the purported high-quality, safety and effectiveness of the implant to induce Plaintiff Steven Newman and his physicians to purchase and use a Pinnacle Device was false.

97.     The Defendants were negligent in obtaining or communicating false information regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

98.     Plaintiff Steven Newman and his physicians relied on the false information supplied by the Defendants to their detriment by causing the Pinnacle Device to be purchased and implanted in Plaintiff Steven Newman.

99.     Plaintiff Steven Newman and his physicians were justified in their reliance on the false information supplied by the Defendants regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

100.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff Steven Newman has suffered significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need for a revision surgery to repair the physical damage to Plaintiff Steven Newman caused by the Pinnacle Device.

**EIGHTH CAUSE OF ACTION**

**FRAUD**
**(Against All Defendants)**

101.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

- 18 -

EXHIBIT 1 - 00035

1    allegation set forth in the preceding paragraphs and further alleges as follows:

2        102.    Defendants made representations to Plaintiff Steven Newman and his physicians that

3    their Pinnacle Device is a high-quality, safe and effective hip replacement system.

4        103.    Before they marketed the Pinnacle Device that was implanted in Plaintiff Steven

5    Newman, Defendants knew or should have known of the unreasonable dangers and serious health risks

6    that such a metal-on-metal total hip replacement system posed to patients like Plaintiff Steven Newman.

7        104.    As specifically described in detail above, Defendants knew that the Pinnacle

8    Device subjected patients to early failure, painful and harmful physical reactions to toxic metallic

9    particles and ions, death of tissue, bone loss and the need for explants and revision surgery.

10       105.    Defendants' representations to Plaintiff Steven Newman and his physicians that their

11   Pinnacle Device is high-quality, safe and effective were false.

12       106.    Defendants concealed their knowledge of the unreasonable risks and dangers

13   associated with the use of the Pinnacle Device to induce Plaintiff Steven Newman and many thousands

14   of others to purchase the system for surgical implantation in their bodies.

15       107.    Neither Plaintiff Steven Newman nor his physicians knew of the falsity of Defendants'

16   statements regarding the Pinnacle Device.

17       108.    Plaintiff Steven Newman and his physicians relied upon and accepted as truthful

18   Defendants' representations regarding the Pinnacle Device.

19       109.    Plaintiff Steven Newman and his physicians had a right to rely on Defendants'

20   representations and in fact did rely upon such representations. Had Plaintiff Steven Newman known that

21   the Pinnacle Device would fail early and expose him to the unreasonable risk of toxic metals, metallosis,

22   and multiple revision surgeries, he would not have purchased or allowed the Pinnacle Device to have

23   been surgically implanted in Plaintiff Steven Newman.

24       110.    As a direct and proximate result of Defendants' fraudulent representations, Plaintiff

25   Steven Newman has suffered significant damages, including but not limited to permanent physical

26   injury, economic loss, pain and suffering and the need for multiple surgeries to repair the physical

27   damage to Plaintiff Steven Newman caused by the Pinnacle Device.

28

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00036

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NINTH CAUSE OF ACTION**
**LOSS OF CONSORTIUM**
**(Against All Defendants)**

111.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

112.    Plaintiffs are husband and wife. As a result, Plaintiff Glorianne Newman has sustained te loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, consortium, assistance, services, and suffered injury, damages, loss or harm in an amount within the jurisdiction of this court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.    Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

B.    Compensation for both economic and non-economic losses, including but not limited to medical expenses, loss of earnings, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

C.    Punitive and/or exemplary damages in such amounts as may be proven at trial;

D.    Attorneys' fees and costs;

E.    Pre- and post-judgment interest;

F.    Loss of Consortium in an amount within the jurisdiction of this court.

G.    Any and all further relief, both legal and equitable, that the Court may deem just and proper.

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00037

1

## JURY DEMAND

2     Plaintiffs hereby demand a trial by jury.

3

4

5     DATED: November 25, 2014          HERZOG, YUHAS, EHRLICH & ARDELL
                                        A Professional Corporation
6

7

8                                   By: _____
                                        JUSTIN EHRLICH
9                                       Attorneys for Plaintiffs,
                                        STEVEN NEWMAN and
10                                      GLORIANNE NEWMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[FIRST AMENDED COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00038

| | |
|---|---|
| 1 | Justin Ehrlich [Bar #217606] |
| 2 | Ian Herzog [Bar #41396]<br>HERZOG, YUHAS, EHRLICH & ARDELL |
| 3 | A Professional Corporation<br>233 Wilshire Boulevard, Suite 550 |
| 4 | Santa Monica, California 90401<br>Telephone:    (310) 458-6660 |
| 5 | Facsimile:    (310) 458-9065 |
| 6 | Attorneys for Plaintiffs<br>STEVEN NEWMAN |
| 7 | GLORIANNE NEWMAN |

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 2 1 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

8   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9   **FOR THE COUNTY OF LOS ANGELES**

| | | |
|---|---|---|
| 10 | STEVEN NEWMAN, an Individual; | CASE NO.   **BC 5 6 4 7 7 8** |
| 11 | GLORIANNE NEWMAN, an Individual, | |
| 12 | Plaintiffs, | **COMPLAINT FOR DAMAGES;**<br>**PERSONAL INJURIES: MEDICAL**<br>**DEVICE;** |
| 13 | vs. | 1.   Negligence |
| 14 | DEPUY ORTHOPAEDICS, INC.; JOHNSON | 2.   Strict Products Liability (Manufacturing<br>Defect) |
| 15 | & JOHNSON; JOHNSON & JOHNSON<br>SERVICES, INC.; and DOES 1-10, Inclusive, | 3.   Strict Products Liability (Design Defect)<br>4.   Strict Products Liability (Inadequate |
| 16 | Defendants. | Warning)<br>5.   Breach of Express Warranty |
| 17 | | 6.   Breach of Implied Warranty of<br>Merchantability |
| 18 | | 7.   Negligent Misrepresentation<br>8.   Fraud |
| 19 | | 9.   Loss of Consortium |
| 20 | | **DEMAND FOR JURY** |

21   **COMPLAINT FOR DAMAGES**

22   Plaintiffs STEVEN NEWMAN, an Individual, and GLORIANNE NEWMAN, an Individual,

23   ("Plaintiffs") allege on information and belief against DEPUY ORTHOPAEDICS, INC., JOHNSON &

24   JOHNSON, JOHNSON & JOHNSON SERVICES, INC., and DOES 1-10, INCLUSIVE,

25   ("Defendants"), the following:

26   **I.**

27   **INTRODUCTION AND SUMMARY OF ACTION**

28   1.   Defendants manufactured the Pinnacle Acetabular Cup System ("Pinnacle

- 1 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00039

1   Device"), and launched it in 2001. The Pinnacle Device was designed, developed, and sold for

2   human hip joints damaged or diseased due to fracture, osteoarthritis, rheumatoid arthritis, and

3   avascular necrosis. The Pinnacle Device is designed to be fastened to human bone with surgical

4   screws. The Pinnacle Device was designed and sold to provide pain relief and consistent and

5   smooth range of motion. Defendants marketed and described the Pinnacle Device as

6   "[u]niquely designed to meet the demands of active patients like you —and reduce pain" and

7   advertised it with pictures of a young woman trying on sneakers in an athletic shoe store.

8   Defendants advertised the Pinnacle Device as a superior device featuring TrueGlide technology,

9   allowing the body to create a thin film of lubrication between surfaces, which enables "a more

10  fluid range of natural motion."

11          2.      Defendants also advertised and sold the Pinnacle Device as the best surgical option that

12  "[r]ecreates the natural ball-and-socket joint of your hip, increasing stability and range of motion."

13          3.      On information and belief Plaintiffs allege that Defendants sold approximately

14  150,000 Pinnacle Devices. Defendants have stated in promotional materials that "99.9% of

15  Pinnacle Hip components are still in use today."

16          4.      On information and belief, Plaintiffs allege that over 1,300 adverse reports have

17  been submitted to the U.S. Food and Drug Administration (FDA) regarding failures or

18  complications of the Pinnacle Device.

19          5.      On information and belief, Plaintiffs allege that Defendants are aware that the use

20  of the Pinnacle Device may result in metallosis, biologic toxicity, and a high failure rate.

21  Plaintiffs further allege that use of the Pinnacle Device results in unsafe release of toxic metal

22  ions into hip implant recipients' tissue and bloodstream. Plaintiffs further allege that Defendants

23  are aware that metal particles from the Pinnacle Device results in metallosis, tissue death, bone

24  erosion, and development of tumors.

25          6.      On information and belief, Plaintiffs allege that particulate debris from the

26  Pinnacle Device causes severe inflammation, severe pain, tissue and bone loss, and other related

27  diseases.

28          7.      Plaintiffs further allege that Defendants are aware that certain Pinnacle Device

- 2 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00040

1   recipients have elevated cobalt and chromium levels greatly exceeding acceptable safety

2   standards.

3                           **II.**

4                      **PARTIES**

5      8.     Plaintiff STEVEN NEWMAN is, and at all times relevant to this Complaint was, a

6   resident of State of California.  On or about April 28, 2005, Plaintiff Steven Newman underwent a left

7   total hip arthroplasty procedure.  At the time of the hip implant surgery, the Pinnacle System

8   manufactured, designed, distributed, and warranted by defendants was implanted into Plaintiff Steven

9   Newman.  Plaintiff Steven Newman's surgeon, medical staff, and other healthcare providers met or

10   exceeded the standard of care applicable to the hip replacement surgery.  The Pinnacle System

11   subsequently failed.

12      9.     Defendant DEPUY ORTHOPAEDICS, INC. is, and at all times relevant to this

13   Complaint was, an Indiana Corporation with its principal place of business at 700 Orthopaedic

14   Drive, Warsaw, Indiana 46581. Defendant DEPUY ORTHOPAEDICS, INC. is and was at all

15   times relevant herein doing business in and/or having directed its activities at Texas, and

16   specifically this judicial district.

17      10.    Defendant JOHNSON & JOHNSON is, and at all times relevant to this Complaint was, a

18   New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  JOHNSON

19   & JOHNSON is the parent company of JOHNSON & JOHNSON SERVICES, INC. and DEPUY

20   ORTHOPAEDICS, INC.  Defendant, JOHNSON & JOHNSON is and was at all times relevant herein

21   doing business in and/or having directed its activities at Texas, and specifically this judicial district.

22      11.    Defendant JOHNSON & JOHNSON SERVICES, INC. is, and at all times

23   relevant to this Complaint was, a New Jersey Corporation with its principal place of business at

24   One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant JOHNSON &

25   JOHNSON SERVICES, INC. is and was at all times relevant herein doing business in and/or

26   having directed its activities at Texas, and specifically this judicial district.

27      12.    Plaintiffs are unaware of the true names and capacities, whether individual,

28   corporate, associate, or otherwise, of defendants DOES 1-10, inclusive, or any of them, and

- 3 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 — 00041

1    therefore sues these Defendants, and each of them, by such fictitious names. Plaintiff will seek

2    leave of this Court to amend this complaint when the status and identities of these Defendants are

3    ascertained.

4         13.    At all times relevant herein, Defendants were the agents of each other, and in

5    doing the things alleged herein, each defendant was acting within the course and scope of its agency and

6    was subject to and under the supervision of its co-defendants.

7                                              III.

8                               **JURISDICTION AND VENUE**

9         14.    This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §

10   1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in

11   controversy exceeds $75,000.00, exclusive of interest and costs.

12        15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

13                                             IV.

14                               **FACTUAL ALLEGATIONS**

15   **A.    The Pinnacle Device With An "Ultamet" (Metal) Liner**

16        16.    The Pinnacle Device was developed for the purpose of reconstructing diseased

17   human hip joints from conditions such as osteoarthritis, rheumatoid arthritis, avascular necrosis

18   (AVN), fracture, and other degenerative conditions. The hip joint connects the thigh (femur)

19   bone of a patient's leg to the patient's pelvis. The hip joint is like a ball that fits in a socket. The

20   socket portion of the hip is called the acetabulum. The femoral head at the top of the femur bone

21   rotates within the curved surface of the acetabulum.

22        17.    The Pinnacle Device is made up of four components: the metal femoral stem is

23   inserted inside the femur bone, the metal femoral head (or ball) connects to the top of the stem

24   and then makes contact with a liner that is attached to the interior portion of the metal acetabulum cup

25   (socket). The acetabulum cup is comprised of a titanium alloy. Either a plastic, ceramic, or cobalt-

26   chromium metal liner is then placed on the inside of the acetabulum cup. The metal femoral head rotates

27   within the plastic, ceramic, or metal liner, depending on which liner the surgeon selects based on the

28   patient's needs. The cobalt-chromium metal liner is branded by Defendants as the "Ultamet." The

EXHIBIT 1 - 00042

1   Pinnacle Device with an Ultamet (metal) liner is a "metal-on metal" device due to the fact that both

2   articulating surfaces — the femoral head (ball) and acetabulum liner (socket) — are comprised of

3   cobalt-chromium metal.

4      B.   **Defendants Did Not Seek Premarket Approval From The FDA, And Thus**
            **The FDA Makes No Finding That The Pinnacle Device Is Safe Or Effective**

5

6      18.   The Pinnacle Device is a Class III medical device. Class III devices are those that

7   operate to sustain human life, are of substantial importance in preventing impairment of human

8   health, or pose potentially unreasonable risks to patients.

9      19.   The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938

10  ("MDA"), in theory, require Class III medical devices, including the Pinnacle Device, to

11  undergo premarket approval by the FDA, a process which obligates the manufacturer to design

12  and implement a clinical investigation and to submit the results of that investigation to the FDA.

13     20.   Premarket approval is a rigorous process that requires a manufacturer to submit

14  what is typically a multivolume application that includes, among other things, full reports of all

15  studies and investigations of the device's safety and effectiveness that have been published or

16  should reasonably be known to the applicant; a full statement of the device's components,

17  ingredients, and properties and of the principle or principles of operation; a full description of

18  the methods used in, and the facilities and controls used for, the manufacture, processing, and,

19  when relevant, packing and installation of, such device; samples or device components required

20  by the FDA; and a specimen of the proposed labeling.

21     21.   The FDA may grant premarket approval only if it finds that there is reasonable

22  assurance that the medical device is safe and effective and must weigh any probable benefit to

23  health from the use of the device against any probable risk of injury or illness from such use.

24     22.   A medical device on the market prior to the effective date of the MDA — a so-called

25  "grandfathered" device — was not required to undergo premarket approval. In addition, a

26  medical device marketed after the MDA's effective date may bypass the rigorous premarket

27  approval process if the device is "substantially equivalent" to a "grandfathered" pre-MDA

28  device (i.e., a device approved prior to May 28, 1976). This exception to premarket approval is

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 — 00043

1 known as the "510(k)" process and simply requires the manufacturer to notify the FDA under
2 section 510(k) of the MDA of its intent to market a device at least 90 days prior to the device's
3 introduction on the market, and to explain the device's substantial equivalence to a pre-MDA
4 predicate device. The FDA may then approve the new device for sale in the United States.

5    23.    Rather than being approved for use by the FDA pursuant to the rigorous
6 premarket approval process, the Pinnacle Device metal-on-metal total hip replacement system
7 was certified to be sold on the basis of Defendants' claim that, under section 510(k) of the
8 MDA, it was "substantially equivalent" to another older metal-on-metal hip implant device that
9 Defendants sold and implanted prior to the enactment of the MDA in 1976.

10    24.    As such, under the 510(k) process, Defendants were able to market the Pinnacle
11 Device with virtually no clinical or non-clinical trials or FDA review of the implant for safety
12 and effectiveness.

13
14    C.    **Defendants Took No Steps To Test The Pinnacle Device Or They Would
Have Discovered That It Leads To Metallosis And Other Complications Before
15    Releasing It On The Market**

16    25.    Had Defendants conducted clinical trials of the Pinnacle Device before it was
17 first released on the market in the early 2000's, they would have discovered at that time what
18 they ultimately learned in and around 2007 — that the Pinnacle Device results in a high
19 percentage of patients developing metallosis, biologic toxicity and an early and high failure rate
20 due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium
21 metal femoral head rotates within the cobalt-chromium metal acetabular liner.

22    26.    In other words, implantation of the Pinnacle Device results in the nearly
23 immediate systemic release of high levels of toxic metal cobalt-chromium ions into every hip
24 implant patient's tissue and bloodstream. This is because cobalt-chromium metal particles are
25 released by friction from the metal femoral head rotating within the metal liner. The particles
26 then accumulate in the patient's tissue surrounding the implant giving rise to metallosis,
27 pseudotumors, or other conditions.

28    27.    The formation of metallosis, pseudotumors, and infection and inflammation causes severe

- 8 -
[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00044

1   pain and discomfort, death of surrounding tissue and bone loss, and a lack of mobility.

2        28.     The problems with the Pinnacle Device are similar to the issues that gave rise to

3   Defendants' recall of the ASR XL Acetabular System and ASR Hip Resurfacing System. Like

4   the Pinnacle Device, the ASR is also prone to early failure, and causes metallosis and cobalt

5   toxicity resulting in serious health problems and the need for subsequent revision surgery. As a

6   result, in August 2010, Defendants, in acknowledging the high failure rate of the ASR, recalled

7   more than 93,000 ASRs worldwide.  It is anticipated that Defendants will at some point recall

8   Pinnacle Devices for the same reasons.

9        29.     Upon information and belief, Plaintiffs allege that the FDA has received more than 1,300

10  adverse reports regarding problems associated with or attributed to the Pinnacle Device.

11       30.     Upon information and belief, Plaintiffs allege that many recipients of the Pinnacle

12  Device are suffering from elevated levels of chromium and cobalt. Plaintiffs further allege on

13  information and belief that Defendants are aware that certain recipients of the Pinnacle Device

14  have significantly elevated levels of chromium and cobalt in amounts many times higher than

15  acceptable or recommended safety levels. Notably, the ASR and the Pinnacle Device were

16  designed by the same orthopaedic surgeon, Dr. Thomas Schmalzried.

17       31.     A number of governmental regulatory agencies have recognized the problems

18  that are caused by metal-on-metal implants such as the ASR and Pinnacle Device. For instance,

19  The Medicines and Healthcare Products Regulatory Agency ("MHRA") in Britain investigated

20  Defendants' metal-on-metal total hip replacement system after receiving widespread reports of

21  soft tissue reactions and tumor growth in thousands of patients who had received these implants.

22  MHRA has required physicians to establish a system to closely monitor patients known to have

23  metal-on-metal hips by monitoring the cobalt and chromium ion levels in their blood and to

24  evaluate them for related soft tissue reactions.

25       32.     Similarly, the Alaska Department of Health recently issued a bulletin warning of

26  the toxicity of Defendants' metal-on-metal total hip replacement systems. The State of Alaska,

27  like the MHRA, identified the need for close medical monitoring, surveillance and treatment of

28  all patients who had received these and similar metal-on-metal implants.

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00045

33.     Despite the public knowledge to the contrary, Defendants' continue to misrepresent the Pinnacle Device as a high-quality, safe and effective hip replacement product in their marketing and promotional materials. This is despite the fact that Defendants have known for years that the Pinnacle Device poses a danger to patients that have it implanted.

34.     As a result, Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among other complications. These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in life-long health problems caused by the defective device.

**D.     Plaintiff Steven Newman Was Implanted With A Pinnacle Device And As A Result Has Suffered Severe Injuries**

35.     On or about April 28, 2005, Plaintiff Steven Newman underwent a left total hip arthroplasty procedure. A Pinnacle Device with a metal liner was implanted in place of his right hip.

36.     Upon information and belief, after the surgery, friction and wear between the cobalt-chromium metal head and cobalt-chromium metal liner caused large amounts of toxic cobalt-chromium metal ions and particles to be released into Plaintiff Steven Newman's blood and tissue and bone surrounding the implant. As a result, Plaintiff Steven Newman has been experiencing severe pain and discomfort and inflammation in his right thigh and groin. He also experiences a popping and snapping sensation in his hip-joint when walking or moving to and from a sitting position.

37.     Due to Plaintiff Steven Newman's chronic pain and discomfort and other symptoms, he will likely have to undergo revision surgery to remove and replace the defective Pinnacle Hip Systems.

38.     All of the injuries and complications suffered by Plaintiff Steven Newman were caused by the defective design, warnings, construction and unreasonably dangerous character of the Pinnacle Device that was implanted in Plaintiff Steven Newman.  Had Defendants not concealed the known defects, the early failure rate, the known complications and the unreasonable risks associated with the use of the Pinnacle Device, Plaintiff would not have consented to the Pinnacle Device being used in

- 8 -

[ COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00046

1   his total hip anthroplasty.

2       39.    Within the last two years, Plaintiff Steven Newman for the first time became aware of the

3   negligent cause of his injuries.  Until then, Plaintiff Steven Newman was unaware of any causal link

4   between the injuries he has suffered and any wrongdoing on the part of Defendants due to the faulty and

5   defective nature of the Pinnacle Device and due in part to the failures of Defendants to properly warn

6   Plaintiff Steven Newman and his physicians about the Pinnacle Device's defective and faulty nature.

7   Plaintiff Steven Newman was unable to make an earlier discovery of the causal link despite reasonable

8   diligence because of Defendants' failure to properly warn Plaintiff Steven Newman and his physicians

9   about the Pinnacle Device's defective and faulty nature, and Defendants' failure to issue any recall or

10  take any proactive action with respect to the injuries being caused to patients that have been implanted

11  with a Pinnacle Device.

12  **CAUSES OF ACTION**

13

14  **FIRST CAUSE OF ACTION**<br>**NEGLIGENCE**<br>**(Against All Defendants)**

15

16      40.    Plaintiff Steven Newman incorporates by reference, as if fully set forth herein, each and

17  every allegation set forth in the preceding paragraphs and further alleges as follows:

18      41.    Defendants had a duty to exercise reasonable care in the designing, researching,

19  manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality

20  control, and/or distribution of the Pinnacle Device into the stream of commerce, including a

21  duty to assure that the device would not cause those who had it surgically implanted to suffer

22  adverse harmful effects from it.

23      42.    Defendants failed to exercise reasonable care in the designing, researching,

24  manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality

25  control, and/or distribution of the Pinnacle Device into interstate commerce in that Defendants

26  knew or should have known that those individuals that had the device surgically implanted were

27  at risk for suffering harmful effects from it including but not limited to partial or complete loss

28  of mobility, loss of range of motion, as well as other severe and personal injuries which are

- 9 -
[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00047

1   permanent and lasting in nature, physical pain and mental anguish, including diminished

2   enjoyment of life, as well as the need for a revision surgery to replace the device with the

3   attendant risks of complications and death from such further surgery.

4       43.    The negligence of Defendants, their agents, servants, and/or employees, included

5   but was not limited to the following acts and/or omissions:

6       a.    Negligently designing the Pinnacle Device in a manner which was dangerous to

7             those individuals who had the device surgically implanted;

8       b.    Designing, manufacturing, producing, creating, and/or promoting the Pinnacle

9             Device without adequately, sufficiently, or thoroughly testing it;

10      c.    Not conducting sufficient testing programs to determine whether or not the

11            aforesaid Pinnacle Device was safe for use;

12      d.    Defendants herein knew or should have known that Pinnacle Device was

13            unsafe and unfit for use by reason of the dangers to its users;

14      e.    Selling the Pinnacle Device without making proper and sufficient tests to

15            determine the dangers to its users;

16      f.    Negligently failing to adequately and correctly warn Plaintiff Steven Newman or

17            his physicians, hospitals and/or healthcare providers of the dangers of Pinnacle

18            Device;

19      g.    Negligently failing to recall their dangerous and defective Pinnacle Device

20            at the earliest date that it became known that the device was, in fact, dangerous

21            and defective;

22      h.    Failing to provide adequate instructions regarding safety precautions to be

23            observed by surgeons who would reasonably and foreseeably come into contact

24            with, and more particularly, implant the Pinnacle Device into their patients;

25      i.    Negligently advertising and recommending the use of the Pinnacle Device

26            despite the fact that Defendants, knew or should have known of its dangerous

27            propensities;

28      j.    Negligently representing that the Pinnacle Device offered was safe for use

- 10 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00048

1  for its intended purpose, when, in fact, it was unsafe;

2      k.    Negligently representing that the Pinnacle Device offered low wear and

3          high stability when in fact the opposite was true;

4      l.    Negligently manufacturing the Pinnacle Device in a manner which was

5          dangerous to those individuals who had it implanted;

6      m.    Negligently producing the Pinnacle Device in a manner which was

7          dangerous to those individuals who had it implanted;

8      n.    Negligently assembling the Pinnacle Device in a manner which was

9          dangerous to those individuals who had it implanted;

10      o.    Defendants under-reported, underestimated and downplayed the serious

11          danger of the Pinnacle Device.

12      44.    Defendants were negligent in the designing, researching, supplying,

13  manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and

14  sale of the Pinnacle Device in that they:

15      a.    Failed to use due care in designing and manufacturing the Pinnacle Device

16          so as to avoid the aforementioned risks to individuals that had the devices

17          surgically implanted;

18      b.    Failed to accompany their product with proper warnings;

19      c.    Failed to accompany their product with proper instructions for use;

20      d.    Failed to conduct adequate testing, including pre-clinical and clinical testing and

21          post-marketing surveillance to determine the safety of the Pinnacle Device; and

22      e.    Were otherwise careless and/or negligent.

23      45.    Despite the fact that Defendants knew or should have known that the Pinnacle

24  Device caused harm to individuals that had the device surgically implanted, Defendants

25  continued to market, manufacture, distribute and/or sell the Pinnacle Device.

26      46.    Defendants knew or should have known that consumers such as Plaintiff Steven Newman

27  would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants'

28  failure to exercise ordinary care, as set forth above.

- 11 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00049

47.     Defendants' negligence was the proximate cause of Plaintiff Steven Newman's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

48.     By reason of the foregoing, Plaintiff Steven Newman experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

49.     Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

50.     In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT)
### (Against All Defendants)

51.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

52.     Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device.

53.     The Pinnacle Device that was surgically implanted in Plaintiff Steven Newman was defective in its manufacture when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk that it could fail early in patients, therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

54.     As a direct and proximate result of Defendants' placement of the defective

- 12 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00050

1    Pinnacle Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will

2    experience severe harmful effects including but not limited to partial or complete loss of mobility, loss

3    of range of motion, as well as other severe and personal injuries which are permanent and lasting in

4    nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the

5    need for a revision surgery to replace the device with the attendant risks of complications and

6    death from such further surgery.

7         55.    Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

8    suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

9         56.    In performing the foregoing acts and omissions, Defendants acted despicably,

10   fraudulently, and with malice and oppression so as to justify an award of punitive and

11   exemplary damages.

12

13                          **THIRD CAUSE OF ACTION**
                   **STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
14                            **(Against All Defendants)**

15        57.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

16   allegation set forth in the preceding paragraphs and further alleges as follows:

17        58.    At all times herein mentioned, Defendants designed, researched, manufactured,

18   tested, advertised, promoted, marketed, sold, and/or distributed the Pinnacle Device as

19   hereinabove described that was surgically implanted in Plaintiff Steven Newman.

20        59.    At all times herein mentioned, the Pinnacle Device designed, researched,

21   manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was

22   in an unsafe, defective, and inherently dangerous condition, which was dangerous to users such as

23   Plaintiff Steven Newman that had the device surgically implanted.

24        60.    At all times herein mentioned, the Pinnacle Device designed, researched,

25   manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was

26   in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

27        61.    At all times herein mentioned, the Pinnacle Device was expected to and did

28   reach the usual consumers, handlers, and persons coming into contact with said product without

[ COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00051

substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

62.    At all times herein mentioned, the Pinnacle Device's unsafe, defective, and inherently dangerous condition was a cause of injury to Plaintiff Steven Newman.

63.    At all times herein mentioned, the Pinnacle Device failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

64.    Plaintiff Steven Newman's injuries resulted from use of the Pinnacle Device that was both intended and reasonably foreseeable by Defendants.

65.    At all times herein mentioned, the Pinnacle Device posed a risk of danger inherent in the design which outweighed the benefits of that design.

66.    At all times herein mentioned, the Pinnacle Device was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

67.    Defendants knew, or should have known, that at all times herein mentioned that the Pinnacle Device was in a defective condition, and was and is inherently dangerous and unsafe.

68.    At the time of the implantation of the Pinnacle Device into Plaintiff Steven Newman, the aforesaid product was being used for the purposes and in a manner normally intended, namely for use as a hip replacement device.

69.    Defendants, with this knowledge, voluntarily designed their Pinnacle Device in a dangerous condition for use by the public and, in particular, Plaintiff Steven Newman.

70.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

71.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff Steven Newman, in particular, and Defendants are therefore strictly liable for the injuries sustained by

- 14 -

[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00052

1    Plaintiff Steven Newman.

2        72.    As a direct and proximate result of Defendants' placement of the defective Pinnacle

3    Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will experience

4    severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of

5    motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical

6    pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision

7    surgery to replace the device with the attendant risks of complications and death from such further

8    surgery.

9        73.    Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

10   suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

11       74.    In performing the foregoing acts and omissions, Defendants acted despicably,

12   fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary

13   damages.

14

15                             **FOURTH CAUSE OF ACTION**
                     **STRICT PRODUCTS LIABILITY (INADEQUATE WARNING)**
16                              **(Against All Defendants)**

17       75.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

18   allegation set forth in the preceding paragraphs and further alleges as follows:

19       76.    Defendants designed, manufactured, tested, marketed and distributed into the

20   stream of commerce the Pinnacle Device.

21       77.    The Pinnacle Device placed into the stream of commerce by Defendants was

22   defective due to inadequate warning, because Defendants knew or should have known that the

23   Pinnacle Device could fail early in patients therefore give rise to physical injury, pain and

24   suffering, debilitation, and the need for a revision surgery to replace the device with the attendant

25   risks of complications and death from such further surgery, but failed to give consumers adequate

26   warning of such risks. Further, the Pinnacle Device placed into the stream of commerce by Defendants

27   was surgically implanted in a manner reasonably anticipated by Defendants.

28       78.    As a direct and proximate result of Defendants' placement of the defective

                                    - 15 -

EXHIBIT 1 - 00053

1   Pinnacle Device into the stream of commerce, Plaintiff Steven Newman experienced and/or will

2   experience severe harmful effects including but not limited to partial or complete loss of mobility, loss

3   of range of motion, as well as other severe and personal injuries which are permanent and lasting

4   in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as

5   the need for a revision surgery to replace the device with the attendant risks of complications

6   and death from such further surgery.

7        79.   Further, as a result of the foregoing acts and omissions, Plaintiff Steven Newman

8   suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

9        80.   In performing the foregoing acts and omissions, Defendants acted despicably,

10  fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary

11  damages.

12

13                     **FIFTH CAUSE OF ACTION**
                       **BREACH OF EXPRESS WARRANTY**
14                        **(Against All Defendants)**

15       81.   Plaintiffs incorporate by reference, as if fully set forth herein, each and every

16  allegation set forth in the preceding paragraphs and further alleges as follows:

17       82.   Defendants designed, manufactured, tested, marketed and distributed into the stream of

18  commerce the Pinnacle Device.

19       83.   Defendants expressly warranted that the Pinnacle Device was a safe and effective

20  hip replacement system.

21       84.   The Pinnacle Device placed into the stream of commerce by Defendants did not

22  conform to these express representations because they failed early thereby giving rise to

23  unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery

24  to replace the device with the attendant risks of complications and death from such further surgery.

25       85.   As a direct and proximate result of Defendants' breach of express warranties

26  regarding the safety and effectiveness of the Pinnacle Device, Plaintiff Steven Newman has suffered

27  significant damages, including but not limited to physical injury, economic loss, pain and suffering, and

28  the need for further surgery to replace the faulty device, and will continue to suffer such damages in

- 16 -
[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00054

1 │ the future.

2 │      86.     In taking the actions and omissions that caused these damages, Defendants were
3 │ guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive
4 │ damages.

5 │                              **SIXTH CAUSE OF ACTION**
6 │              **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
7 │                              **(Against All Defendants)**

8 │      87.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every
9 │ allegation set forth in the preceding paragraphs and further alleges as follows:

10 │      88.    Defendants designed, manufactured, tested, marketed and distributed into the
11 │ stream of commerce the Pinnacle Device.

12 │      89.    At the time Defendants designed, manufactured, tested, marketed and distributed
13 │ into the stream of commerce the Pinnacle Device, Defendants knew the use for which the
14 │ Pinnacle Device was intended, and impliedly warranted the Pinnacle Device to be of
15 │ merchantable quality and safe for such use.

16 │      90.    Plaintiffs reasonably relied upon the skill and judgment of Defendants as to
17 │ whether the Pinnacle Device was of merchantable quality and safe for its intended use.

18 │      91.    Contrary to Defendants' implied warranties, the Pinnacle Device was not of
19 │ merchantable quality or safe for its intended use, because the Pinnacle Device was unreasonably
20 │ dangerous as described above.

21 │      92.    As a direct and proximate result of Defendants' breach of implied warranties
22 │ regarding the safety and effectiveness of the Pinnacle Device, Plaintiff Steven Newman has suffered
23 │ significant damages, including but not limited to physical injury, economic loss, pain and suffering, and
24 │ the need for further surgery to replace the faulty device, and will continue to suffer such damages in
25 │ the future.

26 │      93.    In taking the actions and omissions that caused these damages, Defendants were
27 │ guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive
28 │ damages.

- 17 -
[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00055

## SEVENTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
#### (Against All Defendants)

94.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

95.    The Defendants supplied false information to the public, to Plaintiff Steven Newman and to his physicians regarding the high-quality, safety and effectiveness of the Pinnacle Device. Defendants provided this false information to induce the public, Plaintiff Steven Newman and his physicians to purchase and implant a Pinnacle Device.

96.    The Defendants knew or should have known that the information they supplied regarding the purported high-quality, safety and effectiveness of the implant to induce Plaintiff Steven Newman and his physicians to purchase and use a Pinnacle Device was false.

97.    The Defendants were negligent in obtaining or communicating false information regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

98.    Plaintiff Steven Newman and his physicians relied on the false information supplied by the Defendants to their detriment by causing the Pinnacle Device to be purchased and implanted in Plaintiff Steven Newman.

99.    Plaintiff Steven Newman and his physicians were justified in their reliance on the false information supplied by the Defendants regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

100.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff Steven Newman has suffered significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need for a revision surgery to repair the physical damage to Plaintiff Steven Newman caused by the Pinnacle Device.

## EIGHTH CAUSE OF ACTION
### FRAUD
#### (Against All Defendants)

101.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

- 18 -
[COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00056

1    allegation set forth in the preceding paragraphs and further alleges as follows:

2        102.    Defendants made representations to Plaintiff Steven Newman and his physicians that

3    their Pinnacle Device is a high-quality, safe and effective hip replacement system.

4        103.    Before they marketed the Pinnacle Device that was implanted in Plaintiff Steven

5    Newman, Defendants knew or should have known of the unreasonable dangers and serious health risks

6    that such a metal-on-metal total hip replacement system posed to patients like Plaintiff Steven Newman.

7        104.    As specifically described in detail above, Defendants knew that the Pinnacle

8    Device subjected patients to early failure, painful and harmful physical reactions to toxic metallic

9    particles and ions, death of tissue, bone loss and the need for explants and revision surgery.

10       105.    Defendants' representations to Plaintiff Steven Newman and his physicians that their

11   Pinnacle Device is high-quality, safe and effective were false.

12       106.    Defendants concealed their knowledge of the unreasonable risks and dangers

13   associated with the use of the Pinnacle Device to induce Plaintiff Steven Newman and many thousands

14   of others to purchase the system for surgical implantation in their bodies.

15       107.    Neither Plaintiff Steven Newman nor his physicians knew of the falsity of Defendants'

16   statements regarding the Pinnacle Device.

17       108.    Plaintiff Steven Newman and his physicians relied upon and accepted as truthful

18   Defendants' representations regarding the Pinnacle Device.

19       109.    Plaintiff Steven Newman and his physicians had a right to rely on Defendants'

20   representations and in fact did rely upon such representations. Had Plaintiff Steven Newman known that

21   the Pinnacle Device would fail early and expose him to the unreasonable risk of toxic metals, metallosis,

22   and multiple revision surgeries, he would not have purchased or allowed the Pinnacle Device to have

23   been surgically implanted in Plaintiff Steven Newman.

24       110.    As a direct and proximate result of Defendants' fraudulent representations, Plaintiff

25   Steven Newman has suffered significant damages, including but not limited to permanent physical

26   injury, economic loss, pain and suffering and the need for multiple surgeries to repair the physical

27   damage to Plaintiff Steven Newman caused by the Pinnacle Device.

28

[ COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00057

## NINTH CAUSE OF ACTION
### LOSS OF CONSORTIUM
### (Against All Defendants)

111.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

112.    Plaintiffs are husband and wife. As a result, Plaintiff Glorianne Newman has sustained te loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, consortium, assistance, services, and suffered injury, damages, loss or harm in an amount within the jurisdiction of this court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

B.    Compensation for both economic and non-economic losses; including but not limited to medical expenses, loss of earnings, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

C.    Punitive and/or exemplary damages in such amounts as may be proven at trial;

D.    Attorneys' fees and costs;

E.    Pre- and post-judgment interest;

F.    Loss of Consortium in an amount within the jurisdiction of this court.

G.    Any and all further relief, both legal and equitable, that the Court may deem just and proper.

EXHIBIT 1 - 00058

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: November 21, 2014

HERZOG, YUHAS, EHRLICH & ARDELL
A Professional Corporation

By:_____
JUSTIN EHRLICH
Attorneys for Plaintiffs,
STEVEN NEWMAN and
GLORIANNE NEWMAN

- 21 -
['COMPLAINT FOR DAMAGES]

EXHIBIT 1 - 00059

1:55 p.M   12-12-14

**SUMMONS** on First Amended Complaint                      SUM-100

**(CITACION JUDICIAL)**

| | FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:** D@puy Orthopaedics, Inc.; Johnson
**(AVISO AL DEMANDADO):** & Johnson; Johnson & Johnson
Services, Inc., and DOES 1-10, Inclusive,

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 2 6 2014

**YOU ARE BEING SUED BY PLAINTIFF:** Steven Newman, an
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** Individual;
Glorianne Newman, an Individual,

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.
   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
   ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.
   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:
(El nombre y dirección de la corte es):
LOS ANGELES SUPERIOR COURT
111 North Hill Street | CASE NUMBER:
(Número del Caso):
BC564778 |

Los Angeles, CA  90012
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Justin Ehrlich  [SBN 217606]                      (310) 458-6660
HERZOG, YUHAS, EHRLICH & ARDELL, APC
233 Wilshire Boulevard, Suite 550
Santa Monica, CA 90401
DATE:                                 SHERRI R. CARTER              SHAUNYA BOLDEN        , Deputy
NOV 26 2014                           Clerk, CARTER
(Fecha)                               (Secretario)                                      (Adjunto)
(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served                    as Corp

| [SEAL] | 1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): Johnson & Johnson Service Inc

under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other (specify):
4. ☐ by personal delivery on (date):                                Page 1 of 1 |

| Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal
Solutions
On Plus | Code of Civil Procedure §§ 412.20, 465 |

EXHIBIT 1 - 00060

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill Street
Los Angeles, CA  90012

PLAINTIFF: Steven Newman, an Individual;

DEFENDANT: Depuy Orthopaedics, etc.

**CIVIL DEPOSIT**

Reserved for Clerk's File Stamp
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 2 1 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

CASE NUMBER:
BC 5 6 4 7 7 8

Clerk: Prepare a form for each depositior paying separately.

PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:

| | Room 102, Central Civil | | Clerk's Office, Room | | Department Number |

| ✓ | | Distribution Codes | Amt. Due | ✓ | | Distribution Codes | Amt. Due |
|---|---|---|---|---|---|---|---|
| | 251 | DAILY JURY FEES<br>Dates:<br># of day(s)      X $ | | | 74 | DEPOSIT IN TRUST | |
| x | 72 | JURY FEES<br>Trial Date:<br>(Initial Deposit) $    150.00 | 150.00 | | 101 | FIRST PAPERS<br>(General Jurisdiction) | |
| | | REPORTER'S FEES<br>Dates:<br># of 1/2 day(s)      X $ | | | 101<br>141<br>130 | FIRST PAPERS<br>Limited over $10,000<br>With declaration Limited to  $10,000<br>(Per B&P 6322.1(a))<br>Limited to $10,000 | |
| | 253<br>252 | Half day<br>Full Day | | | | | |
| | 721 | SANCTIONS ORDERED ON<br>Date: | | | 211 | RECLASSIFICATION FEE | |
| | 213 | MOTION/APPLICATION TO CONTINUE HEARING | | | 150 | COMPLEX LITIGATION TRIAL/Plaintiff | |
| | 200 | MOTION/APPLICATION TO CONTINUE TRIAL | | | 151 | COMPLEX LITIGATION/Defendant | |
| | | Other: | | | | | |

To be paid via    [ ] Cash    [x] Check    [ ] Certified Check/Money Order    [ ] Credit Card

[ ] On or before: _____    [ ] Forthwith

Payment will be made by    [x] Plaintiff   Steven Newman, an Individual;    [ ] Defendant   Dupuy Orthopaedics, etc.

JOHN A. CLARKE, Executive Officer/Clerk

DATED: November 21, 2014

BY: _____
Deputy Clerk

### TO BE COMPLETED BY DEPOSITOR

Depositor's Name   HERZOG, YUHAS, EHRLICH & ARDELL, APC

[ ] Plaintiff in Pro Per    [ ] Defendant in Pro Per

[ ] Counsel for    [x] Plaintiff   Steven Newman, an Individual;
Name of Party

[ ] Defendant   Dupuy Orthopaedics, etc.
Name of Party

Address of depositor

233 Wilshire Boulevard, Suite 550
Street

Los Angeles, CA  90401
City/State/Zip

### CASHIER'S VALIDATION

LACIV 083 (Rev. 01/07)
LASC Approved 03-04

**CIVIL DEPOSIT**
Distribution: Original – Case File Copy – Customer

LA-063

EXHIBIT 1 – 00061

File 3191

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL PERSONAL INJURY CASE
Case Number _____   BC 5 6 4 7 7 8

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

**Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).**

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Gregory Keosian | 91 | 635 | | | | |
| Hon. Elia Weinbach | 92 | 633 | | | | |
| Hon. Gail Feuer | 93 | 631 | | | | |
| Hon. Teresa Beaudet | 97 | 630 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

FSC: 03 / 06 / 2016 TRIAL: 05 / 23 / 2016 OSC: 11 / 21 / 2017

Given to the Plaintiff/Cross-Complainant/Attorney of Record on NOV 21 2014        SHERRI R. CARTER, Executive Officer/Clerk

SHAUNYA BOLDEN

LACIV PI 190 (Rev09/13)
LASC Approved 05-06                                      By _____, Deputy Clerk
For Optical Use

### NOTICE OF CASE ASSIGNMENT –
### UNLIMITED CIVIL CASE

EXHIBIT 1 - 00062

**FILED**

Los Angeles Superior Court

NOV 1 0 2014

Sherri R. Carter, Executive Officer/Clerk

By: K. Gaudreau Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re Personal Injury Cases Assigned to the
Personal Injury Courts (Departments 91, 92,
93, and 97)

)
)
)
)
)
)
)
)

Case No.:

THIRD AMENDED GENERAL ORDER
RE PERSONAL INJURY COURT ("PI
Court") PROCEDURES (Effective as of
November 4, 2014)

---

**DEPARTMENT:** 91   92   93   97

**FINAL STATUS CONFERENCE ("FSC"):**

- **Date:** _____ at 10:00 a.m.

**TRIAL:**

- **Date:** _____ at 8:30 a.m.

**OSC re DISMISSAL (Code Civ. Proc., § 583.210):**

- **Date:** _____ at 8:30 a.m.

---

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California

Rules of Court, and the Los Angeles County Court Rules ("Local Rules"), the Los

Angeles  Superior  Court  ("LASC"  or  "Court")  HEREBY  AMENDS  AND

SUPERSEDES  ITS  APRIL  4,  2014  AMENDED  GENERAL  ORDER  AND

11/10/14

EXHIBIT 1 - 00063

1   GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL

2   JURISDICTION PERSONAL INJURY ACTIONS:

3       Effective March 18, 2013, the Court responded to systemic budget reductions by

4   centralizing the management of more than 18,000 general jurisdiction personal injury cases

5   in the Stanley Mosk Courthouse.  LASC opened three Personal Injury Courts ("PI Courts")

6   (Departments 91, 92 and 93), and on January 6, 2014, a fourth (Department 97) to adjudicate

7   all pretrial matters for these cases.  It also established a Master Calendar Court (Department

8   One), to manage the assignment of trials to 31 dedicated Trial Courts located countywide.

9   This Amended General Order lays out the basic procedures for the PI Courts' management of

10  pretrial matters.  The parties will find additional information about the PI Courts on the

11  court's website, *www.lacourt.org*.

12

13  1.      To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil

14  Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

15          "an unlimited civil case described on the Civil Case Cover Sheet Addendum and

16          Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property

17          Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-

18          Uninsured Motorist; Product Liability (other than asbestos or

19          toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other

20          Professional Health Care Malpractice; Premises Liability; Intentional Bodily

21          Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property

22          Damage/Wrongful Death. An action for intentional infliction of emotional

23          distress, defamation, civil rights/discrimination, or malpractice (other than

24          medical malpractice), is not included in this definition. An action for injury to

25          real property is not included in this definition."   Local Rule 2.3(a)(1)(A).

26

27

2

11/10/14

EXHIBIT 1 - 00064

The Court will assign a case to the PI Courts if plaintiff(s) check any of the following

boxes in the Civil Case Cover Sheet Addendum:

    A7100 Motor Vehicle -- Personal Injury/Property Damage/Wrongful

    Death

    A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured

    Motorist

    A7260 Product Liability (not asbestos or toxic/environmental)

    A7210 Medical Malpractice – Physicians & Surgeons

    A7240 Medical Malpractice – Other Professional Health Care Malpractice

    A7250 Premises Liability (e.g., slip and fall)

    A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,

    assault, vandalism etc.)

    A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes

elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and

three of that form).

2.    The Court sets the above dates in this action in the PI Court circled above

(Department 91, 92, 93, or 97) at the Stanley Mosk Courthouse, 111 North Hill Street, Los

Angeles, CA 90012. Cal. Rules of Court, Rules 3.714(b)(3), 3.729.

**SERVICE OF SUMMONS AND COMPLAINT**

3.    Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s)

within <u>three years</u> of the date when the complaint is filed. C. C. P. § 583.210, subd. (a). On

the OSC re Dismissal date noted above, the PI Court will dismiss **the action and/or** all

3

EXHIBIT 1 – 00065

1   unserved parties unless the plaintiff(s) show cause why the action or the unserved parties
2   should not be dismissed. C.C.P. §§ 583.250; 581, subd. (b)(4).
3   4.      The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate
4   service on defendant(s) of the summons and complaint within six months of filing the
5   complaint. Upon a showing that the plaintiff(s) failed to effect service within six months, the
6   PI Court will vacate the trial and FSC date noted above.
7
8   **STIPULATIONS TO CONTINUE TRIAL**
9   5.      Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.
10  § 583.310), the parties may advance or continue any trial date in the PI Courts without
11  showing good cause or articulating any reason or justification for the change.  To continue or
12  advance a trial date, the parties (or their counsel of record) should jointly execute and file (in
13  Room 102 of the Stanley Mosk Courthouse; fee required) a Stipulation to Continue Trial,
14  FSC and Related Motion/Discovery Dates (form available on the court's website, Personal
15  Injury Court link). The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before
16  the trial date.  Parties seeking to continue the trial and FSC dates shall file the Stipulation at
17  least eight court days before the FSC date.   Parties seeking to advance the trial and FSC
18  dates shall file the Stipulation at least eight court days before the proposed advanced FSC
19  date.  Code Civ. Proc., § 595.2;   Govt. Code § 70617, subd. (c)(2).
20
21  **NO CASE MANAGEMENT CONFERENCES**
22  6.      The PI Courts do not conduct Case Management Conferences.  The parties need not
23  file a Case Management Statement.
24
25
26
27

4                                         11/10/14

EXHIBIT 1 - 00066

LAW AND MOTION

**ANY DOCUMENTS WITH DECLARATIONS AND/OR EXHIBITS MUST BE TABBED.  CRC §3.1110(f)**

**ALL DEPOSITION EXCERPTS REFERENCED IN BRIEFS MUST BE MARKED ON THE TRANSCRIPTS ATTACHED AS EXHIBITS.   CRC §3.1116(c)**

> *If your filing is not tabbed or depositions are not marked, do not file without the tabs or marked depositions unless today is the last day for filing.  If so, you must file a tabbed/marked copy with the clerk in the department where your motion will be heard within 2 court days.*

**Chambers Copies Required**

7.      In addition to filing original motion papers in Room 102 of the Stanley Mosk Courthouse, the parties must deliver, directly to the PI Court courtrooms, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the Chambers Copies behind tabs.

**Reservation of Hearing Date**

8.      Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System available online at *www.lacourt.org* (link on homepage). Parties or counsel who are unable to utilize the online Court Reservation System may reserve a motion hearing date by telephoning the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**Withdrawal of Motion**

9.      California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the

5                                                                           11/10/14

EXHIBIT 1 - 00067

1  PI Courts urge parties who amend pleadings in response to demurrers to file amended

2  pleadings before the date when opposition to the demurrer is due so that the PI Courts do not

3  needlessly prepare tentative rulings on demurrers.

4  **Discovery Motions** The purpose of an Informal Discovery Conference ("IDC") is to assist

5  the parties to resolve and/or narrow the scope of discovery disputes. Lead trial counsel on

6  each side, or another attorney with full authority to make binding agreements, must attend in

7  person. The PI judges have found that, in nearly every case, the parties amicably resolve

8  disputes with the assistance of the Court.11. Parties **must** participate in an IDC **before** a

9  Motion to Compel Further Responses to Discovery will be heard, unless, the moving party

10  submits evidence, by way of declaration, that the opposing party has failed or refused to

11  participate in an IDC. Scheduling or participating in an IDC does not extend any deadlines

12  imposed by the Code of Civil Procedure for noticing and filing discovery motions. Ideally,

13  the parties should participate in an IDC before a motion is filed because the IDC may avoid

14  the necessity of a motion or reduce its scope. Because of that possibility, attorneys are

15  encouraged to stipulate to extend the 45 (or 60) day deadline for filing a motion to compel

16  further discovery responses in order to allow time to participate in an IDC. If parties do not

17  stipulate to extend the deadlines, the moving party may file the motion to avoid it being

18  deemed untimely. However, the IDC must take place before the motion is heard so it is

19  suggested that the moving party reserve a date for the motion hearing that is at least 60 days

20  after the date when the IDC reservation is made. Motions to Compel Further Discovery

21  Responses are heard at 10:00 a.m. If the IDC is not productive, the moving party may

22  advance the hearing on a Motion to Compel Further Discovery Responses on any available

23  hearing date that complies with the notice requirements of the Code of Civil Procedure.

24

25

26

27

6                                                          11/10/14

EXHIBIT 1 - 00068

1

## PROOF OF SERVICE

2

3          I am over the age of eighteen years and not a party to the within-entitled
action.  My business address is 2029 Century Park East, Suite 300, Los Angeles,
4   California 90067.  I am readily familiar with this firm's practice for collection and
processing of correspondence for mailing with the United States Postal Service.  On
5   January 12, 2015, I placed with this firm at the above address for deposit with the
United States Postal Service a true and correct copy of the within document(s):

6          **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.**
          **SECTION 1441(b) (DIVERSITY)**
7

8          in a sealed envelope, postage fully paid, addressed as follows:

9   Justin Ehrlich                          **Attorneys for Plaintiffs STEVEN**
    Ian Herzog                              **NEWMAN and GLORIANNE NEWMAN**
    HERZOG, YUHAS, EHRLICH &
10  ARDELL                                  T:    (310) 458-6660
    233 Wilshire Boulevard, Suite 550       F:    (310) 458-9065
11  Santa Monica, CA 90401

12

13         Following ordinary business practices, the envelope was sealed and placed
for collection and mailing on this date, and would, in the ordinary course of
14  business, be deposited with the United States Postal Service on this date.

15         I declare that I am employed in the office of a member of the bar of this court
at whose direction the service was made.
16

17         Executed on January 12, 2015, at Los Angeles, California.

18

19

20                                                              Brigette S. Price

21

22

23

24

25

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW

1